FILED

RIDOUT & LYON, LLP
CHRISTOPHER P. RIDOUT (State Bar No. 143931)
    Email: c.ridout@ridoutlyonlaw.com
DEVON M. LYON (State Bar No. 218293)
    Email: d.lyon@ridoutlyonlaw.com
CALEB LH MARKER (State Bar No. 269721)
    Email: c.marker@ridoutlyonlaw.com
555 E. Ocean Blvd., Suite 500
Long Beach, California  90802
(562) 216-7380
(562) 216-7385 Facsimile

2011 OCT 26  PM 2: 42

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY_____

**Attorneys for Plaintiff**

(Additional Counsel Listed Below)

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

CV11 8872 -JNN (VBKx)

| | |
|---|---|
| ERIC MITCHELL, individually and on behalf of all others similarly situated, | CASE NO: |
| Plaintiff, | **COMPLAINT (CLASS ACTION)** |
| vs. | 1) BREACH OF CONTRACT; |
| RESEARCH IN MOTION, LTD., a Delaware corporation, | 2) BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; |
| Defendant. | 3) MONEY HAD AND RECEIVED; |
| | 4) NEGLIGENCE; AND |
| | 5) VIOLATION OF BUS. AND PROF. CODE § 17200 *ET SEQ.* |
| | (JURY TRIAL DEMANDED) |

Plaintiff Eric Mitchell (hereinafter "Plaintiff" or "Mitchell") brings this national class action, by and through his undersigned counsel, on behalf of himself and all other similarly situated persons in the Class defined below, based upon information and belief and the investigation of counsel, except for information based upon personal knowledge, and hereby allege as follows:

## I.     GENERAL DESCRIPTION OF ACTION

1.     Plaintiff Eric Mitchell ("Plaintiff) brings this class action against Research In Motion, Ltd., (referred to herein as the "Defendant" or "RIM") to redress Defendant's negligence, breaches and failures to provide continuous service as the BlackBerry smartphones that Plaintiff and Class members purchased were intended to do.

2.     RIM is the manufacturer of the BlackBerry line of smartphones. Plaintiff and other members of the Class use the e-mail, text and other functions on BlackBerry smartphones for both business and personal use.  During the week of October 10, 2011, an outage at a RIM data center caused a worldwide service outage for BlackBerry users, leaving them without full text, e-mail and/or other services for a period of time.  More specifically, RIM BlackBerry e-mail service, which manages the email system for millions of customers around the world, suffered a failure in Europe during the week of October 10, 2011, which eventually caused a significant e-mail backlog. The company's failovers also failed and eventually, RIM was forced to throttle service in Europe to try and address the problem. That action led to an e-mail slow down and disruption of service in other parts of the world, including the United States, starting on or about Wednesday, October 12, 2011.  The outage lasted for more than a day, causing injury to Plaintiff and the Class, who could not use their BlackBerry smartphones as intended and paid for during this period.

3.     Plaintiff and others in the Class rely on their BlackBerry smartphone devices as a means to communicate in real-time via e-mail, text message and/or other means for both business and personal uses.

4.     RIM admits that it was responsible for customers being unable to use the products and services that they paid for in real-time, as intended.   On October 14, 2011, RIM President and Co-CEO Mike Lazaridis posted a video on RIM's website apologizing for the outage, saying that the company failed its customers.

Mr. Lazaridis stated in the video: "Since launching BlackBerry in 1999, it's been my goal to provide reliable real-time communications around the world," "We did not deliver on that goal this week--not even close. I apologize for the service outages this week. We've let many of you down."     http://www.rim.com/newsroom/service-update.shtml.

5.     On October 17, 2011, RIM issued a press release announcing that that it would provide affected consumers a selection of premium applications ("apps") for a limited time free of charge as "as expression of appreciation for their patience during the recent service disruptions." http://press.rim.com/release.jsp?id=5214 (Exh. 1). This non-cash "offer", however falls short of fully and properly compensating Plaintiff and the members of the Class for the failure to provide service on the affected days and the injuries caused.  For example, as one CNN article explains, many users have no use for these apps, even if free, while all users have a use for cash compensation:

> But response was more measured among less-enthusiastic customers. "What a useless 'compensation'," wrote one commenter on the website for London's Guardian newspaper. "What [if] somebody uses their device for communications (e.g. e-mail) rather than using loads of apps? The value in apps is totally worthless." Many had been hoping to at least be reimbursed for the amount of time their service was out.[1]

Discussing the unrelated nature of the "compensation" to the injury, one BlackBerry customer and a writer noted the following:

> "Keep the compensation close to the pain. If you break my window, I don't want a bottle of wine, I want you to fix my window," says Wallace. "It's good to remember as an owner to think like the customer. You want back the value of what you lost."

---

[1] CNN.com, *BlackBerry users offer apps, not cash, for outage*, last visited on October 17, 2011, available online at <http://www.cnn.com/2011/10/17/tech/mobile/blackberry-free-apps/index.html?iref=allsearch>.

One of the general complaints about Blackberry's solution was that the free apps didn't seem comparable to—for some subscribers—days of no service."[2]

6.     RIM failed to provide the service to BlackBerry customers in the Class that it had a duty to and was obligated to provide. Such conduct by RIM breached its contracts with the class, as well as other legal duties and obligations.  As a result, Plaintiff and the members of the Class are entitled to cash compensation.  Class members are required to pay for their BlackBerry smartphones and monthly service contracts in cash.  RIM dictates that the only acceptable medium of exchange in its transactions with Class members is cash.  RIM, in turn, should provide cash compensation when its conduct results in that service not being provided.  This lawsuit is brought to recover that cash compensation.

## II.     JURISDICTION AND VENUE

7.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332(d), as the matter in controversy exceeds $5 million, Plaintiff and the Class have diverse citizenship from Defendant, and none of the exceptions apply.

8.     Venue is appropriate in this Court.   Defendant RIM transacts business in this State and Judicial District.   Certain events and conduct giving rise to the claims in this action occurred in this Judicial District.   Plaintiff resides in this Judicial District, uses his Blackberry smartphone in this Judicial District and due to the events complained of herein was unable to use his Blackberry smartphone in this Judicial District during the period of the outage described.   Upon information and belief, thousands of Class members reside in this Judicial District, use their Blackberry smartphones in this Judicial District and due to the events complained of herein were unable to use their Blackberry smartphones in this Judicial District

---

[2] Nicole Carter, *Lessons from BlackBerry on Making Peace With Your Customers*, INC. MAGAZINE (October 19, 2011), available online at <http://www.inc.com/articles/201110/blackberry-lessons-on-making-peace-with-your-customers.html>.

1    during the period of the outage described. RIM has sufficient minimum contacts in

2    the State of California or otherwise intentionally prevails itself of the California

3    market through the sale of its products, advertising and other activities, so as to

4    render the exercise of jurisdiction over it by the California courts consistent with

5    traditional notions of fair play and substantial justice.

6                                **III.    THE PARTIES**

7           9.      Plaintiff Eric Mitchell is an adult individual who at all relevant times

8    has resided in Sherman Oaks, California.

9           10.     At relevant times, including at all times between October 10-17, 2011,

10   Mitchell owned and had a service agreement to use a BlackBerry smartphone.

11          11.     To the best of his knowledge, Mitchell signed no written service

12   contract directly with RIM.  Mitchell, however, was charged fees by RIM and paid

13   those fees as part of his monthly bill with his carrier, Sprint.  Mitchell's contract with

14   RIM was an implied contract.

15          12.     Plaintiff has no applications on his BlackBerry smartphone and has no

16   use or desire for any BlackBerry applications.

17          13.     The Class, defined below, consists of all residents of the United States

18   who owned BlackBerry smartphones and had an active service agreement with an

19   authorized carrier between October 11 and 14, 2011.

20          14.     Research in Motion Limited is a Delaware corporation and has its

21   principal place of business located in Waterloo, Ontario, Canada.   Its U.S.

22   headquarters are located in Irving, Texas.  RIM is a registered corporation with the

23   California Secretary of State (Entity Number: C2361352).  RIM's agent for service

24   of process is CT Corporation System, located at 818 W. Seventh Street, Los Angeles,

25   California 90017.

26   ///

27   ///

28

---

15.    RIM is one of the largest manufacturers of smartphones in the world. RIM is the manufacturer of the BlackBerry line of smartphones.    BlackBerry smartphones provide its users cell phone service, as well as e-mail, text messaging, internet access, data and other applications.

16.    RIM's 2011 Annual Report states that "[i]n 2010, BlackBerry was the #1 selling smartphone brand in a number of markets around the world including the United States, Canada, Latin America and the United Kingdom."[3]

17.    RIM regularly conducts business in the State of California.  RIM sells BlackBerry smartphones to consumers in California and throughout the United States directly via the internet and through stores identified on the "Where to Buy" feature on its website <http://us.blackberry.com/smartphones/>.

18.    RIM's website provides: "Research In Motion (RIM), a global leader in wireless innovation, revolutionized the mobile industry with the introduction of the BlackBerry® solution in 1999.    The BlackBerry product line includes the BlackBerry® PlayBook™ tablet, the award-winning BlackBerry smartphone, software for businesses and accessories.  BlackBerry products and services are used by millions of customers around the world to stay connected to the people and content that matter most throughout their day." http://www.rim.com/company/.  The website goes on to provide: "Leading innovation Research In Motion (RIM) is the company behind the innovative and award-winning BlackBerry® product line.  The BlackBerry family includes best-in-class smartphones and software offerings, as well as the BlackBerry PlayBook, the world's first professional-grade tablet.  Setting the bar for mobile access to email, applications and more, the BlackBerry family of

---

[3] RESEARCH IN MOTION, 2011 Annual Report, Message from Co-CEOs, available online at <http://www.rim.com /investors/ documents/ pdf/annual /2011 rim_ar.pdf>.

products also allows virtual real-time communication, so you can stay in touch with the people and information that matter most."

19.    Further, in its 2011 Annual Report, RIM stated "BBM [BlackBerry Messenger] gives users something they truly value; "Right Now" communications with the people that matter most."

20.    RIM's 2011 Annual Report further provides:

> The power of the BlackBerry platform in the enterprise goes beyond the smartphone to connect all facets of a traditional office and mobilize it. With the BlackBerry smartphone at the hub of the mobile office, real-time information and unified communications are pushed to the device so workers can be "in the office" virtually anywhere. Behind each BlackBerry smartphone in the enterprise is the BlackBerry Enterprise Solution where RIM's global network infrastructure integrates with the BlackBerry® Enterprise Server software to enable access to an organization's corporate data and telephone servers, providing a mobile platform that maintains a high level of security outside the boundaries of a traditional office. The functionality, security and reliability of the BlackBerry Enterprise Solution is what allowed RIM to become the leader in the enterprise market with more than 90% of the Fortune 500 companies deploying the BlackBerry solution. Cloud technology has been part of RIM's business for a long time. The always-on connectivity of a BlackBerry smartphone is powered by RIM's own cloud infrastructure – an infrastructure that has been developed, managed and refined for more than 10 years. It helps RIM deliver real-time data push, market-leading security and backend integration with carrier systems. It helps BlackBerry smartphones deliver a renowned user experience.

RESEARCH IN MOTION, 2011 Annual Report, *The Unseen Power of Enterprise Solutions*, available online at <http://www.rim.com/investors/documents/pdf/annual/2011rim_ar.pdf>.

21.    RIM's 2011 Annual Report further provides: "RIM's global BlackBerry Infrastructure remains a core advantage for our business and is an integral part of RIM's ability to deliver industry leading push services, security, manageability and spectral efficiency for RIM's customers and partners. The amount of global data traffic supported by the BlackBerry Infrastructure more than doubled year over year to more than 15 petabytes each month and our focused investments made throughout

the year helped us evolve and expand the infrastructure to support this growth and to build for the future."[4]

22.    In making these statements, RIM intended its customers to rely on it to provide stable, continuous, uninterrupted voice and data service.  RIM had a duty to provide stable, continuous and uninterrupted voice and data service.   RIM failed to do so.   It was reasonably foreseeable to RIM that if it failed to provide stable, continuous and uninterrupted voice and data service, its customers (like Plaintiff and those in the Class) would be injured from the inability to communicate in real-time with the people "that matter most."

## IV.   FACTUAL ALLEGATIONS

23.    Consumers buy BlackBerry smartphones directly from BlackBerry or from an authorized third-party carrier or reseller (such as Sprint or Verizon). Consumers then purchase a monthly service plan from a third-party carrier or reseller (such as Sprint or Verizon) for voice, email and data service, of which a portion of the amount paid each month goes to RIM to compensate it for provision of its e-mail system / data center.

24.    RIM's 2011 Annual Report explains:

***Sources of Revenue***
RIM's primary revenue stream is generated by the BlackBerry wireless solution, which includes sales of BlackBerry wireless devices, software and services. The BlackBerry wireless solution provides users with a wireless extension of their work and personal email accounts, including Microsoft Outlook, IBM Lotus Notes, Novell GroupWise, and many ISP email services. RIM generates hardware revenues from sales, primarily to carriers, of BlackBerry wireless devices, which provide users with the ability to send and receive wireless messages and data. RIM's BlackBerry wireless devices also incorporate a mobile phone, webbrowsing capability and enable the use of data functions such as calendar, address book, task and memo lists and other functions associated with personal organizers. Certain BlackBerry devices also include multimedia capabilities. RIM generates service revenues from

---

[4] RESEARCH IN MOTION, 2011 Annual Report, Message from Co-CEOs, available online at <http://www.rim.com /investors/ documents/ pdf/annual /2011 rim_ar.pdf>.

billings to its BlackBerry subscriber account base primarily from a monthly infrastructure access fee charged to a carrier or reseller, which the carrier or reseller in turn bills the BlackBerry subscriber. The BlackBerry subscriber account base is the total of all subscriber accounts that have an active status at the end of a reporting period. Each carrier instructs RIM to create subscriber accounts and determines whether each subscriber account should have an active status. Each carrier is charged a service fee for each subscriber account each month, with substantially all of such service fees having no regard to the amount of data traffic that the subscriber account passes over the BlackBerry architecture. If a carrier instructs RIM to deactivate a subscriber account, then RIM no longer includes that subscriber account in its BlackBerry subscriber account base and ceases billing the carrier with respect to such account from the date of notification of its deactivation.

25. Plaintiff, like thousands of other members of the Class, purchased a BlackBerry smartphone and had an active voice and data service agreement at all relevant times, including between October 12 and 14, 2011.

26. Plaintiff, like thousands of other members of the Class, had an implied contract with RIM. As its Annual Report states, RIM generates service revenues from billings to its BlackBerry subscriber account base primarily from a monthly infrastructure access fee charged to a carrier or reseller, which the carrier or reseller in turn bills the BlackBerry subscriber. Mitchell, like other members of the Class was charged fees by RIM and paid fees to RIM in this way, creating a contract.

27. During the week of October 10, 2011, RIM experienced a major outage in its email system / data center preventing its customers in the United States and other countries from using their BlackBerry smartphones as intended.

28. The initial outage was caused by a failure of one of RIM's core switches. Further trouble began when RIM's redundant systems failed as well. "The failover did not function as expected," RIM Chief Technology Officer for Software David Yach said, "despite the fact that we regularly test failover systems." http://www.cnn.com/2011/10/12/tech/mobile/blackberry-outage-email-backup/index.html. This led to a significant backup of mail. RIM responded by throttling service in the impacted area to stabilize service, which apparently resulted

in backup of mail in other regions trying to reach RIM's European customers. The Canadian-based company would not reveal the exact number of RIM customers affected, saying only that many customers are impacted in a variety of ways. "Some see delays, some service interruption," Yach said.

29. Plaintiff was a BlackBerry user on the affected days. He uses his BlackBerry device for business purposes and relies on the device to provide constant, uninterrupted e-mail service in real-time so that he can conduct his business in a prompt and efficient manner. As a result of Defendant's actions and the outage, Plaintiff was unable to receive business and personal e-mails and other communications in real-time, without delay, reducing and interfering with his productivity and causing him damage and loss of money. In turn, Plaintiff paid for a service that he did not receive.

## V.    CLASS ACTION ALLEGATIONS

30. This action is brought as a class action and may properly be so maintained pursuant to Code of Civil Procedure §382, Civil Code §1781 and any other applicable laws or rules of civil procedure.

31. **Class Definition**: The Class sought to be represented in this action is defined as follows:

> "All persons and entities in the United States who owned a BlackBerry device and had an active service agreement with an authorized carrier between October 11-14, 2011 and through which RIM received compensation, directly or indirectly." (hereinafter, the "Class").

A subclass consists of:

> "All persons and entities in California who owned a BlackBerry device and had an active service agreement with an authorized carrier between October 11-14, 2011 and through which RIM received compensation, directly or indirectly." (hereinafter, the "Subclass").

The Class Period dates back four years (or the length of the longest applicable statute of limitations for any claim asserted) from the date this action was originally filed

1   and continues through the present and the date of judgment. Excluded from the Class

2   are: (a) any officers, directors or employees of the Defendant; (b) any judge assigned

3   to hear this case (or spouse or family member of any assigned judge); (c) any

4   employee of the Court; and, (d) any juror selected to hear this case.

5       32.   **Numerosity of the Class.** Members of the Class are so numerous that

6   their individual joinder herein is impracticable. The precise number of members of

7   the Class / Subclass and their addresses are presently unknown to Plaintiff, but is

8   believed to exceed 2.4 million California residents alone.[5] The precise number of

9   persons in the Class and their identities and addresses may be ascertained from

10   Defendant's records. If deemed necessary by the Court, members of the class may

11   be notified of the pendency of this action by mail and/or e-mail, including by

12   including the notice in customer's monthly billing statements.

13       33.   **Ascertainable Class**. The proposed Class is ascertainable. The

14   litigation of the questions of fact and law involved in this action will resolve the

15   rights of all members of the Class and hence, will have binding effect on all class

16   members. These Class Members can be readily identified from business records,

17   billing systems, and other electronic records of Defendant and other means readily

18   available to Defendant, and thus by the Plaintiff, through minimally intrusive

19   discovery. By attempting to offer the Class free apps, Defendant has demonstrated

20   that it can ascertain the affected population of its customers who are due a remedy.

21   The class is numerous. Joinder of all class members is impracticable due to the

22   relatively small monetary recovery for each class member in comparison to the

23   costs associated with separate litigation.

24

25        _____

26   [5] As of May 2011, approximately 19.97 million Americans used RIM's BlackBerry devices. In 2010, California's population comprised 12.07% of the U.S. Population. As such, Plaintiff believes at least 19 million class members and 2.41 million subclass members exist.

27

28

34.    **Common Questions of Fact and Law Exist and Predominate over Individual Issues.**  There is a well-defined community of interest in the questions of law and fact involved affecting the parties to be represented. These common questions of law and fact exist as to all members of the class and predominate over the questions affecting only individual members of the class.  These common legal and factual questions include without limitation:

a.    The cause and extent of the outage;

b.    whether Defendant breached its express or implied agreements with class members by failing to provide the voice and/or data service class members paid for during the outage;

c.    whether Defendant acted negligently in failing to properly maintain the email system for BlackBerry smartphone users in the United States;

d.    whether Defendant engaged in unfair or unlawful practices by failing to provide the voice and/or data service class members paid for, and then not providing refunds;

e.    whether Defendant violated California Business and Professions Code Section 17200 *et seq.*; and

f.    whether Plaintiff and the Class are entitled to cash compensation as a result of Defendant's conduct failing to provide service, not merely an offer of free apps to be downloaded during a limited time period.

35.    **Typicality.**    The claims of the named Plaintiff are typical of the claims of the Class, as the claims of Plaintiff and all Class members arise from the same set of facts regarding Defendant's failure to provide Class members BlackBerry service on the days in question.  Plaintiff's dealings with Defendant have no unique attributes that would render his claims atypical.  Defendant dealt with Plaintiff and collected revenue from Plaintiff in the same manner it did with other members of the class. Plaintiff maintains no interest antagonistic to the

interests of other Class members.  The relief sought is common, unitary, and class-wide in nature.  By attempting to offer the Class free apps as a result of the outage, Defendant has already demonstrated that provision of a remedy is not dependant on unique attributes of a particular class member's transaction or dealings with RIM.

36.  **Adequacy**. The named Plaintiff is an adequate representatives of the Class on whose behalf this action is prosecuted.  Plaintiff's interests do not conflict with the interests of the Class.  Plaintiff has retained competent counsel with experience in class action litigation and will prosecute this action vigorously.  As a result, Plaintiff can fairly and adequately represent and protect the interests of the class in that there are no conflicts between their interests and the interests of other class members, this action is not collusive, the named Plaintiff and his counsel have the necessary resources to litigate this action, and counsel has the experience and ability required to prosecute this case as a class action.

37.  **Community of Interest**. The proposed Class has a well defined community of interest in the questions of fact and law to be litigated.  The common questions of law and fact are predominant with respect to the liability issues, relief issues and anticipated affirmative defenses. The named Plaintiff has claims typical of the Class members.   All class members share a common interest in receiving a cash remedy as compensation for the service failure.

38.  **Superiority of Class Adjudication**. The certification of a class in this action is superior to the litigation of a multitude of cases by members of the putative class. Class adjudication will conserve judicial resources and will avoid the possibility of inconsistent rulings.  Equity dictates that all persons who stand to benefit from the relief sought herein should be subject to the lawsuit and hence subject to an order spreading the costs of the litigation among the class members in relationship to the benefits received.  The economic damages, restitution and other potential recovery for each individual member of the Class are modest, relative to

1   the substantial burden and expense of individual prosecution of these claims.

2   Given the amount of the individual class members' claims, few, if any, class

3   members could afford to seek legal redress individually for the wrongs complained

4   of herein. Individualized litigation presents a potential for inconsistent or

5   contradictory judgments. Individualized litigation increases the delay and expense

6   to all parties and the court system presented by the complex legal and factual issues

7   of the case. By contrast, the class action device presents far fewer management

8   difficulties, and provides the benefits of single adjudication, economy of scale, and

9   comprehensive supervision by a single court.

10       39.     In the alternative, the above-referenced class may be certified because:

11       a.      The prosecution of separate actions by the individual members of the

12               Class would create a risk of inconsistent or varying adjudication with

13               respect to individual class members' claims which would establish

14               incompatible standards of conduct for Defendant;

15       b.      The prosecution of separate actions by individual members of the

16               Class would create a risk of adjudications which would as a practical

17               matter be dispositive of the interests of other members of the class

18               who are not parties to the adjudications, or which would substantially

19               impair or impede the ability of other class members to protect their

20               interests; and,

21       c.      Defendant has acted or refused to act on grounds generally applicable

22               to the class, thereby making appropriate final and injunctive relief with

23               respect to the class.

24   / / /

25   / / /

26   / / /

27   / / /

28

## COUNT I

### BREACH OF CONTRACT

#### (On Behalf of the Class)

40.    Plaintiff fully incorporates by reference herein all of the above paragraphs, as though fully set forth herein.

41.    Plaintiff and the Class purchased BlackBerry smartphones directly from BlackBerry or from an authorized carrier or reseller.  Class members then also purchase a monthly service plan from the third-party carrier or reseller for voice, email and data service, of which a portion of the amount paid each month, goes to RIM to compensate it for provision of its e-mail system / data center.

42.    RIM generates service revenues from billings to its BlackBerry subscriber account base from a monthly infrastructure access fee charged to the carrier or reseller, which the carrier or reseller in turn bills the BlackBerry subscriber.  This creates an implied contract between RIM and the members of the Class for continuous, uninterrupted service and access.

43.    Plaintiff believes that each class member pays at least $1 per day for access to RIM's BlackBerry service.

44.    In its 2011 Annual Report, RIM reported that $3.2 billion of its total annual revenue of $19.9 billion is derived from the BlackBerry service.[6]  RIM further discloses that it earns 39.3% of its revenue in the United States (meaning that approximately $1.2576 billion in service revenues come from U.S. customers).[7]  As such, Plaintiff estimates that RIM earns at least $3.4 million per day in service revenue.

45.    Plaintiff and the Class ultimately paid these fees.

---

[6] See, RESEARCH IN MOTION, Annual Report, at 11, *available online* at <http://www.rim.com/investors/documents/pdf/annual/2011rim_ar.pdf>.

[7] *Id.*, at 80.

46.    By purchasing BlackBerry smartphones and service plans, Plaintiff and the Class entered into contracts with RIM that the phones would provide continuous voice and data service, allowing them to receive e-mail and other functions without interruption.

47.    By reason of the outage, described above, RIM failed to provide voice and/or data service to Class members at relevant times between October 11 and 14, 2011.    As a result, Plaintiff and the Class were unable to receive e-mail and use other features of the smartphone in real time.

48.    By failing to provide uninterrupted service to Plaintiff and the Class on all days in which they paid for service, RIM breached its contracts with Plaintiff and the Class.

49.    As a result, Plaintiff and the Class have suffered injury, been damaged and lost money.  Plaintiff and the Class were charged for and paid for service on days in which service was not provided.

50.    RIM's offer of free apps to thank its customers for the inconvenience incurred during the outage is insufficient.  The parties chosen medium of exchange at the outset of the relationship, as dictated by RIM, is cash.  Plaintiff and the class are required to pay for their smartphones and monthly service charges in cash.  RIM, in turn, should provide cash compensation when it fails to provide the goods and service charged for.

51.    By reason of the foregoing, Plaintiff and each member of the Class are entitled to recover from Defendant damages, the cost of bringing this action (including reasonable attorneys' fees and costs), and any other relief allowed by law and deemed just and equitable in the circumstances.

/ / /

/ / /

/ / /

## COUNT II

### BREACH OF THE IMPLIED COVENENT

### OF GOOD FAITH AND FAIR DEALING

### (On Behalf of the Class)

52.   Plaintiff fully incorporates by reference herein all of the above-stated paragraphs, as though fully set forth herein.

53.   Implied in every contract is the covenant of good faith and fair dealing.

54.   Defendant, though the above-described conduct, breached the implied covenant of good faith and fair dealing.

55.   Plaintiff and the Class were charged for and paid for service on days in which service was not provided.   RIM received a portion of the amounts paid by the Class.

56.   As a result of Defendant's conduct, Plaintiff and the Class have suffered injury, been damaged and lost money.  Plaintiff and the Class were charged for and paid for service on days in which service was not provided.

57.   By failing to provide uninterrupted service to Plaintiff and the Class on all days in which they paid for service, RIM has been unjustly enriched at the expense of Plaintiff and the Class.

58.   By failing to provide uninterrupted service to Plaintiff and the Class on all days in which they paid for service, RIM should compensate Plaintiff and the Class to avoid being unjustly enriched at the expense of Plaintiff and the Class.

59.   RIM's offer of free apps to thank its customers for their understanding and for the inconvenience incurred during the outage is insufficient.   The parties' chosen medium of exchange at the outset of the relationship, as dictated by RIM, is cash.  Plaintiff and the Class have always been required to pay for their smartphone devices and monthly service charges in cash.   RIM, in turn, should provide cash compensation when it fails to provide the goods and/or service charged for and paid

by the Class.    By only offering apps, and even then for a limited time (through December 2011), without at least a cash option for those who have no use for the apps offered within the short window of redemption, RIM acts unfairly and breaches the implied covenant of good faith and fair dealing.

60.    By reason of the foregoing, Plaintiff and each member of the Class are entitled to recover from Defendant damages, the cost of bringing this action (including reasonable attorneys' fees and costs), and any other relief allowed by law and deemed just and equitable in the circumstances.

## COUNT III

### MONEY HAD AND RECEIVED

### (On Behalf of the Class)

61.    Plaintiff fully incorporates by reference herein all of the above-stated paragraphs, as though fully set forth herein.

62.    RIM generates service revenues from billings to its BlackBerry subscriber account base from a monthly infrastructure access fee charged to the carrier or reseller, which the carrier or reseller in turn bills the BlackBerry subscriber.

63.    Plaintiff believes that each class member pays at least $1 per day for access to RIM's BlackBerry service.

64.    In its 2011 Annual Report, RIM reported that $3.2 billion of its total revenue of $19.9 billion is derived from the BlackBerry service.[8]   RIM further discloses that it earns 39.3% of its revenue in the United States (meaning that approximately $1.2576 billion in service revenues come from U.S. customers).[9]

65.    Plaintiff and the Class paid these revenues.

---

[8] See, RESEARCH IN MOTION, Annual Report, at 11, *available online* at <http://www.rim.com/investors/documents/pdf/annual/2011rim_ar.pdf>.
[9] *Id.*, at 80.

66.   Plaintiff and the Class were charged for and paid for service on days in which service was not provided.   RIM received a portion of the amounts paid by the Class.

67.   Defendant received money that was intended to be used for the benefit of Plaintiff and the Class.   That money was not used for the benefit of Plaintiff and the Class.  Defendant failed to provide consideration for the money the Class paid for service on the day of the outage.   Defendant, therefore, is indebted to Plaintiff and the Class in a certain sum for money had and received by the defendant for the use of the plaintiff.

68.   Defendant has not given that money to Plaintiff and the Class.

69.   By failing to provide uninterrupted service to Plaintiff and the Class on all days in which they paid for service, RIM has been unjustly enriched at the expense of Plaintiff and the Class.   In equity and good conscience, the money received should be not be retained by Defendant but rather, returned to Plaintiff and the Class.

70.   As a result, Plaintiff and the Class have suffered injury, been damaged and lost money.

71.   By reason of the foregoing, Plaintiff and each member of the Class are entitled to recover from Defendant damages, the cost of bringing this action (including reasonable attorneys' fees and costs), and any other relief allowed by law and deemed just and equitable in the circumstances.

## COUNT IV

### NEGLIGENCE

### (On Behalf of the Subclass)

72.   Plaintiff fully incorporates by reference herein all of the above paragraphs, as though fully set forth herein.

73.   The elements of a cause of action for negligence are 1) a legal duty to use due care, 2) a breach of that duty, 3) a reasonably close causal connection between that breach and the plaintiff's resulting injury, and 4) actual loss or damage to the plaintiff. Cal. Civ. Code §1714(a) provides "everyone is responsible, not only for the result of his willful acts, but also for an injury occasioned to another by his want of ordinary care or skill in the management of his property or person, except so far as the latter has, willfully or by want of ordinary care, brought the injury upon himself.

74.   RIM had a legal duty to use reasonable care to maintain stable, continuous, uninterrupted service on its system / data center for its customers.

75.   RIM knew that its customers (including Plaintiff and the Subclass) relied on it to provide stable, uninterrupted voice and data service, including email service.

76.   RIM markets its BlackBerry smartphone as a reliable product for stable uninterrupted, voice and data service, including email service.

77.   It was reasonably foreseeable that if RIM failed to maintain its system / data center so as to provide stable, uninterrupted voice and data service, including email services, the customers (including Plaintiff and the Subclass) who used BlackBerry smartphones for personal and business use, would be injured and damaged, as they would not be able to maintain the communications they expected to when choosing a BlackBerry smartphone.

78.   On its website and elsewhere, RIM markets its smartphones to the business community as a tool to "stay connected to the people and content that matter most throughout their day" and to increase and assist with business productivity.  It was reasonably foreseeable to RIM that customers who use their BlackBerry smartphones for business purposes, such as Plaintiff, would lose

1    productivity and efficiently by not being able to immediately access and respond to

2    emails in real-time, causing damage and loss.

3        79.    By their acts described herein, Defendant failed to maintain reasonable

4    care of its systems so as to provide uninterrupted voice and data service, including

5    email service, for its customers.  Such conduct breached its duties.  The breach was a

6    direct and proximate result of Defendant's failure to use reasonable care to

7    implement and maintain appropriate procedures reasonably designed to protect

8    against such outages.

9        80.    As a result of the foregoing, Plaintiff and the Subclass were injured,

10   incurred loss and are entitled to damages, restitution and other relief.

11       81.    By reason of the foregoing, Plaintiff and each member of the Subclass

12   are entitled to recover from Defendant damages, the cost of bringing this action

13   (including reasonable attorneys' fees and costs), and any other relief allowed by law

14   and deemed just and equitable in the circumstances.

## COUNT V

## VIOLATION OF BUS. & PROF. CODE 17200 *ET SEQ.*

### (On Behalf of the Subclass)

18       82.    Plaintiff fully incorporates by reference herein all of the above

19   paragraphs, as though fully set forth herein.

20       83.    Plaintiff brings this claim individually, on behalf of the Subclass, and on

21   behalf of the general public pursuant to § 17200 *et. seq*. of the Bus. & Prof. Code,

22   the Unfair Competition Act (the "UCL").

23       84.    Plaintiff brings this claim on behalf of the Subclass pursuant to *Bus. &*

24   *Prof. Code §17204* which prohibits unfair competition, defined as "any unlawful,

25   unfair or fraudulent business act or practice."  Plaintiff suffered injury, damages in

26   fact and out-of-pocket loss as a result of Defendant's unlawful and unfair conduct

27   and practices, as described above.  Defendant's conduct, as described above, has

28

been and continues to be detrimental to the Subclass and Plaintiff is seeking to enforce important rights affecting the public interest within the meaning of *Code of Civil Procedure §1021.5.*

85.     As described above, by failing to provide service on the dates in which the outage occurred, Defendant systematically breached its contracts with Plaintiff and the Subclass.   By failing to provide cash refunds and compensation for the period in which service was not provided, Defendant systematically breached its contracts with Plaintiff and the Subclass.   Such conduct was unlawful and violates *Bus. & Prof. Code §17204* which prohibits "any unlawful … business act or practice."

86.     In addition, Defendant's conduct breaching its contracts and then offering Subclass members only free apps for a limited time period, but not restitution of money paid (or even an option for restitution in lieu of the apps) is unfair.   At the outset of each Subclass member's transaction with Defendant and /or the carrier/reseller, Defendant dictated that the medium of exchange for transactions with the Subclass would be cash.     Refusing to provide cash refunds and compensation for the foregoing acts, in that same medium of exchange, therefore, is unfair.   Such conduct violates *Bus. & Prof. Code §17204* which prohibits "any … unfair … business act or practice."

87.     The acts complained of herein, and each of them, constitute unfair or unlawful business practices in violation of *Business and Professions Code §17200 et. seq*.   Defendant's acts and practices described herein offend established public policies, and involve business practices that are immoral, unethical, oppressive, and/or unscrupulous.

88.     The unlawful and unfair business practices set forth above have and continue to injure the Subclass and the general public and cause damage in fact and the loss of money, as described further within.   Plaintiff and the members of the

Subclass paid Defendant money, directly or indirectly, for their BlackBerry smartphones and for monthly service plans, including for the month of October 2011. By continuing to refuse to provide cash refunds and compensation for the loss of service during the outage Defendant has been unjustly enriched at the expense of the Subclass. As a result, Plaintiff, the Subclass and the general public are entitled to restitution and other equitable relief.

89.    By reason of the foregoing, Plaintiff and each member of the Subclass are entitled to recover from Defendant restitution, cash refunds of fees paid Defendant, disgorgement of revenues and profits obtained from unlawful practices, injunctive relief, declaratory relief, the cost of bringing this action (including reasonable attorneys' fees and costs), and any other relief allowed by law and deemed just and equitable in the circumstances.

## IX.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Eric Mitchell, as an individual and on behalf of those similarly situated in the Class and Subclass, prays for relief and judgment against Defendant, as follows:

A.    that this Court certify the Class and Subclass and appoint Plaintiff Eric Mitchell and the undersigned counsel to represent them in this litigation;

B.    that this Court enter judgment in favor of Plaintiff and the Class and Subclass, and against Defendant under the legal theories alleged herein;

C.    that this Court award damages to Plaintiff, the Class and Subclass on the Counts that allow damages;

D.    that this Court award restitution to Plaintiff, the Class and Subclass;

E.    that this Court award attorneys' fees, expenses, and costs of this suit;

F.    that this Court award Plaintiff, the Class and Subclass pre-judgment and post- judgment interest at the maximum rate allowable by law; and

1      G.    that this Court award further relief as it deems equitable, just and

2  proper.

3                        **X.    JURY DEMAND**

4        Plaintiff demands a trial by jury for all issues so triable.

Respectfully submitted,

RIDOUT & LYON, LLP

Dated: October 26, 2011  By:

Christopher P. Ridout, CA Bar No. 143931
Devon M. Lyon, CA Bar No. 218293
Caleb LH Marker, CA Bar No. 269721
555 E. Ocean Boulevard, Suite 500
Long Beach, CA 90802
(562) 216-7380
(562) 216-7385 Facsimile

J. Gordon Rudd, Jr., MN Bar No. 222082
ZIMMERMAN REED, PLLP
1100 IDS Center
80 S. Eighth Street
Minneapolis, MN 55402
(612) 341-0400
(612) 341-0844 Facsimile
*Subject to Admission Pro Hac Vice*

**Attorneys for Plaintiff**

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY**

This case has been assigned to District Judge Jacqueline Nguyen and the assigned discovery Magistrate Judge is Victor B. Kenton.

The case number on all documents filed with the Court should read as follows:

## CV11- 8872 JHN (VBKx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

==================================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [X] **Western Division**<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | [ ] **Southern Division**<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | [ ] **Eastern Division**<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |
|---|---|---|

Failure to file at the proper location will result in your documents being returned to you.

Name & Address:
Ridout & Lyon, LLP
Christopher P. Ridout, Esq.
555 E. Ocean Blvd., Ste. 500
Long Beach, CA  90802
(562) 216-7380

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIC MITCHELL, individually and on behalf of all others similarly situated<br><br>PLAINTIFF(S)<br><br>v.<br><br>RESEARCH IN MOTION, LTD., a Delaware corporation<br><br>DEFENDANT(S). | CASE NUMBER<br><br>**CV11-8872 JHN(VBK)**<br><br><br>**SUMMONS** |

TO:   DEFENDANT(S): RESEARCH IN MOTION, LTD., a Delaware corporation

A lawsuit has been filed against you.

Within __21__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney,  Christopher P. Ridout , whose address is 555 E. Ocean Blvd., Ste 500, Long Beach, CA 90802 .  If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: __OCT  2 6  2011__

By: _____

Deputy Clerk

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)
ERIC MITCHELL, individually and on behalf of all others similarly situated

**DEFENDANTS**
RESEARCH IN MOTION, LTD., a Delaware corporation,

**(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)
Ridout & Lyon, LLP
Christopher P. Ridout, Esq.
555 E. Ocean Blvd, Ste. 500, Long Beach, CA  90802 (562) 216-7380

Attorneys (If Known)

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff

☐ 2 U.S. Government Defendant

☐ 3 Federal Question (U.S. Government Not a Party)

☑ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☑ 1 | ☑ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☑ Yes   ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☑ Yes   ☐ No   ☑ MONEY DEMANDED IN COMPLAINT: $ According to Proof

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
29 U.S.C. Section 201

**VII. NATURE OF SUIT** (Place an X in one box only.)

**OTHER STATUTES**
☐ 400 State Reapportionment
☐ 410 Antitrust
☐ 430 Banks and Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation
☐ 470 Racketeer Influenced and Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Sat TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 890 Other Statutory Actions
☐ 891 Agricultural Act
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 895 Freedom of Info. Act
☐ 900 Appeal of Fee Determination Under Equal Access to Justice
☐ 950 Constitutionality of State Statutes

**CONTRACT**
☐ 110 Insurance
☐ 120 Marine
☐ 130 Miller Act
☐ 140 Negotiable Instrument
☐ 150 Recovery of Overpayment & Enforcement of Judgment
☐ 151 Medicare Act
☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans)
☐ 153 Recovery of Overpayment of Veteran's Benefits
☐ 160 Stockholders' Suits
☐ 190 Other Contract
☑ 195 Contract Product Liability
☐ 196 Franchise

**REAL PROPERTY**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**TORTS**
**PERSONAL INJURY**
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Fed. Employers' Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Personal Injury-Med Malpractice
☐ 365 Personal Injury-Product Liability
☐ 368 Asbestos Personal Injury Product Liability

**IMMIGRATION**
☐ 462 Naturalization Application
☐ 463 Habeas Corpus-Alien Detainee
☐ 465 Other Immigration Actions

**TORTS**
**PERSONAL PROPERTY**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**BANKRUPTCY**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**CIVIL RIGHTS**
☐ 441 Voting
☐ 442 Employment
☐ 443 Housing/Accommodations
☐ 444 Welfare
☐ 445 American with Disabilities - Employment
☐ 446 American with Disabilities - Other
☐ 440 Other Civil Rights

**PRISONER PETITIONS**
☐ 510 Motions to Vacate Sentence Habeas Corpus
☐ 530 General
☐ 535 Death Penalty
☐ 540 Mandamus/Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**FORFEITURE/PENALTY**
☐ 610 Agriculture
☐ 620 Other Food & Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 R.R. & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety /Health
☐ 690 Other

**LABOR**
☐ 710 Fair Labor Standards Act
☐ 720 Labor/Mgmt. Relations
☐ 730 Labor/Mgmt. Reporting & Disclosure Act
☐ 740 Railway Labor Act
☐ 790 Other Labor Litigation
☐ 791 Empl. Ret. Inc. Security Act

**PROPERTY RIGHTS**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**SOCIAL SECURITY**
☐ 861 HIA (1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g))
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
☐ 870 Taxes (U.S. Plaintiff or Defendant)
☐ 871 IRS-Third Party 26 USC 7609

**CV11-8872**

**FOR OFFICE USE ONLY:**   Case Number:

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**VIII(a).  IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No  ☐ Yes
If yes, list case number(s): _____

**VIII(b).  RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑ No  ☐ Yes
If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**
(Check all boxes that apply)  ☐ A.  Arise from the same or closely related transactions, happenings, or events; or
                              ☐ B.  Call for determination of the same or substantially related or similar questions of law and fact; or
                              ☐ C.  For other reasons would entail substantial duplication of labor if heard by different judges; or
                              ☐ D.  Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:**  (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
☐  Check here if the government, its agencies or employees is a named plaintiff.  If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
☐  Check here if the government, its agencies or employees is a named defendant.  If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | Delaware |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
   **Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | |

* **Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved.

X. SIGNATURE OF ATTORNEY (OR PRO PER):  _____   Date  October 26, 2011

   **Notice to Counsel/Parties:**   The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program.  (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability.  (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended.  (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

CV-71 (05/08)                                         CIVIL COVER SHEET                                         Page 2 of 2