1   RIDOUT & LYON, LLP
    CHRISTOPHER P. RIDOUT (State Bar No. 143931)
2       Email: c.ridout@ridoutlyonlaw.com
    CALEB LH MARKER (State Bar No. 269721)
3       Email: c.marker@ridoutlyonlaw.com
    555 E. Ocean Blvd., Suite 500
4   Long Beach, California  90802
    (562) 216-7380
5   (562) 216-7385 Facsimile

6   ZIMMERMAN REED, PLLP
    J. GORDON RUDD JR. (*Pending Admission Pro Hac Vice*)
7       Email: Gordon.Rudd@zimmreed.com
    1100 IDS Center
8   80 South Eighth Street
    Minneapolis, MN  55402
9   (612) 341-0400
    (612) 341-0844 Facsimile

10
    *Attorneys for Plaintiff*
11

12              UNITED STATES DISTRICT COURT

13             CENTRAL DISTRICT OF CALIFORNIA

14  ERIC MITCHELL, individually and on      Case No. CV11-8872-MWF-VBK
    behalf of all others similarly situated,
15                                           **MEMORANDUM IN OPPOSITION**
                 Plaintiff,                  **TO DEFENDANTS' MOTION TO**
16                                           **COMPEL ARBITRATION OR IN**
          vs.                                **THE ALTERNATIVE TO DISMISS**
17                                           **PLAINTIFF'S FIRST AMENDED**
    RESEARCH IN MOTION, LTD., a              **COMPLAINT**
18  Canadian corporation, and RESEARCH IN
    MOTION CORPORATION, a Delaware           Date:      May 21, 2012
19  corporation,                             Time:      10:00 a.m.
                                             Place:     Courtroom 1600 (Spring)
20               Defendants.
                                             *Assigned for all purposes to the Honorable*
21                                           *Michael W. Fitzgerald*

22

23

24

25

26

27

28

---
MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION OR IN THE
ALTERNATIVE TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

# **Table of Contents**

Table of Authorities ............................................................................................. iii

I.      INTRODUCTION ......................................................................................... 1

II.     STATEMENT OF FACTS ............................................................................ 2

        A.      Defendants' Relation to BlackBerry Smartphones........................... 2

        B.      Plaintiff's Blackberry Smartphone................................................... 3

        C.      Defendants' Software License Agreements ...................................... 4

                1.      Software License Agreements ............................................... 4

III.    APPLICABLE LAW ................................................................................... 6

IV.     ARGUMENT ............................................................................................... 7

        A.      Defendants' Arbitration Provision Found in the SLA is Procedurally
                Unconscionable. ............................................................................... 7

        B.      Defendants' Arbitration Provision Found in the SLA is Substantively
                Unconscionable ................................................................................ 9

                1.      The SLA's Arbitration Agreement Lacks Mutuality ............. 9

                2.      RIM Artificially Limits Its Customer's Recovery in Arbitration
                        While Not Imposing any Such Limit on Itself.................... 12

                3.      The SLA Requires Arbitration Under Terms That Prevent
                        Consumers From Pursuing and Vindicating Their Claims.............. 14

        A.      The Court Need Not Consider Equitable Estoppel Because the Express,
                Written Contracts Between Plaintiff and Sprint Do Not Indicate Intent to
                Arbitrate with Defendants................................................................ 19

                1.      The Court Should Give Effect to the Plain Language of Sprint's
                        Arbitration Clause, Which Expressly Limits Mandatory Arbitration
                        to Disputes Between Sprint and Its Customers................................. 19

                1.      Equitable Estoppel Is Improper Given The Existence of An Express
                        Agreement.......................................................................... 21

                2.      No "Rare Circumstances" Are Present To Warrant Equitable
                        Estoppel ............................................................................ 22

                3.      Defendants' Motion Fails Because Defendants Cannot Show that
                        Plaintiff's Claims Are Intertwined with Sprint's Agreement. ......... 22

        A.      Defendants' Motion to Dismiss Should be Denied In Its Entirety ............. 24

                1.      Applicable Standard ........................................................... 24

i

2.   The "Uninterrupted Service" Disclaimers in the Blackberry Solution License Agreement and Blackberry Internet Service End User Agreement Do Not Foreclose Plaintiff's Claims.............................. 24

3.   Plaintiff Has Sufficiently Pleaded a Cause of Action in Count I for Breach of Contract........................................................................... 26

4.   Plaintiff Has Stated A Cause of Action In Count II for Breach of Implied Covenant of Good Faith and Fair Dealing........................ 27

5.   Plaintiff Has Stated A Cause of Action in Count III for Money Had and Received.................................................................................... 28

6.   Plaintiff Has Stated A Cause of Action in Count IV for Negligence. ...................................................................................................... 29

7.   Plaintiff Has Stated A Cause of Action in Count V for a Violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et. seq.* ("UCL") .................................................................. 31

IV.   CONCLUSION ........................................................................... 33

MEMORANDUM IN OPPOSITION TO MOTION TO COMPEL ARBITRATION OR IN THE ALTERNATIVE TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

## Table of Authorities

**Cases**

*Abramson v. Juniper Networks, Inc.*, 115 Cal. App. 4th 638, 9 Cal. Rptr. 3d 422, 436 (Ct. App. 2004) ........................................................................................................ 10

*America Online, Inc. v. Superior Court*, 90 Cal. App. 4th 1, 17 (Cal. App. 1st Dist. 2001) . 18

*Amisil Holdings Ltd. v. Clarium Capital Mgmt.,* 622 F. Supp. 2d 825, 840-41 (N.D. Cal. 2007) ........................................................................................................ 23

Amparan v. Plaza Home Mortg., 2008 U.S. Dist. LEXIS 109148, at *43 (N.D. Cal. Dec. 17, 2008) ........................................................................................................ 28

*Aral v. EarthLink, Inc.,* 134 Cal. App. 4th 544, 557 (2005) .............................................. 14

*Arce v. Kaiser Found. Health Plan, Inc.,* 181 Cal. App. 4th 471, 489 (2010) ................... 32

*Arguelles-Romero v. Super.Ct.*, 184 Cal.App.4th 825, 836 (2010). .................................... 6

*Armendariz v. Foundation Health Psychcare Serv., Inc.* 24 Cal. 4th 83 (2000)............. 10

Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) ........................................................ 24

*AT&T Mobility LCC v. Concepcion,* _U.S._, 131 S. Ct. 1740, 1748 (2011)........ 17, 18, 20

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)..................................................... 24

*Blecher& Collins, P.C. v. Nw. Airlines, Inc.,* 858 F. Supp. 1442, 1459 (C.D. Cal. 1994).... 26

*Cal Chiropractic Ass'n v. Am. Specialty Health Plans, Inc.*, No. D039238, 2003 WL 1870963, at *6 (Cal. Ct. App. Apr. 14, 2003) ................................................ 22

*Cathay Bank v. Lee,* 14 Cal.App.4th 1533, 1541(1993) ................................................ 26

Chastain v. Union Sec. Life Ins. Co., 502 F.Supp.2d 1072, 1075 (C.D.Cal. 2007)............. 20

Chiron Corp v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000) ............ 20

*Circuit City Stores, Inc. v. Adams*, 279 F.3d 889, 893 (9th Cir. 2002)................................ 7

*Comer v. Micor, Inc.*, 436 F.3d 1098, 1104 n.11 (9th Cir. 2006)...................................... 22

*Comunale v. Traders & Gen. Ins. Co.,* 50 Cal. 2d 654, 658, 328 P.2d 198, 200 (1958)...... 27

*Coneff v. AT & T Corp* .......................................................................................... 17

*Cruz v. Cingular Wireless, LLC,* 648 F.3d 1205, 1215 (11th Cir.2011) ........................... 17

Diaz v. Allstate Ins. Group, 185 F.R.D. 581, 595 (C.D.Cal.1998)................................... 32

*Doctor's Associates, Inc. v. Casarotto, supra,* 517 U.S. 681, 687, 116 S.Ct. 1652, 134 L.Ed.2d 902................................................................................................ 6

MEMORANDUM IN OPPOSITION TO MOTION TO COMPEL ARBITRATION OR IN THE ALTERNATIVE TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

*Ervin v. Nokia, Inc.*, 349 Ill. App. 3d 508 (Ill. App. Ct. 5th Dist. 2004)..........................21

*Fed. Nat'l Mortgage Assn. v. Bugna*, 57 Cal. App. 4th 529, 535 (1997)...........................26

*Fox v. Nationwide Credit, Inc.*, No. 09-cv-7111, 2010 WL 3420172, at *4 (N.D. Ill. Aug. 25, 2010) ..........................................................................................................................20

Gabana Gulf Distribution, Ltd. v. GAP Intern. Sales, Inc., 2008 WL 111223 (N.D. Cal. Jan. 9, 2008)..........................................................................................................................32

*Goldman v. KPMG LLP*, 92 Cal. Rptr. 3d 534 (Cal. Ct. App. 2009)...................21, 22, 23

*Green Tree Fin. Corporation-Alabama v. Randolph* ................................................16, 17

*Hamby v. Power Toyota Irvine*, No. 11CV544, 2011 WL 2852279, at *9 (S.D. Cal. July 18, 2011).............................................................................................................................6

*Hornicek v. Cardworks Servicing, LLC*, No. 10-3631, 2001 WL 2623274, at *3 (E.D. Pa. June 29, 2011) ....................................................................................................................20

*In re Checking Account Overdraft Litig.*, No. 09-MD-02036, 2011 WL 4454913, *4 (S.D. Fla. Sept. 1, 2011) ...........................................................................................................6

*In re Merrill Lynch Trust Co. FSB*, 235 S.W.3d 185, 191 (Tex. 2007) ............................21

*Jeffrey Delong, et al. v. TaxMasters, Inc., et al.*, Case No.: 11-01431-ODW, Order Granting in Part and Denying in Part Motion to Dismiss (Doc. 55), at 5-6, (C.D. Cal., 2011) ........11

*Just Film, Inc., v. Merchant Servs., Inc.,* 2011 WL 3809908, at *6 (N.D. Cal. Aug. 29, 2011) ................................................................................................................................22

*Kinney v. United Healthcare Servs., Inc.,* 70 Cal.4th 1322, 1329 (1999)............................7

*Klamath Water Users Protective Ass'n v. Patterson,* 204 F.3d 1206, 1210 (9th Cir.1999)..25

*Krawitz v. Rusch*, 209 Cal. App. 3d 957, 963 (Ct. App. 1989)........................................29

*Lhotka v. Geographic Expeditions, Inc.,* 181 Cal. 4th 816.........................................9, 12

*Little v. Auto Stiegler, Inc.,* 29 Cal. 4th 1064, 1071 (Cal. 2003) ....................................16

Lucas v. Dep't of Corrs., 66 F.3d 245, 248 (9th Cir. 1995) ...........................................24

Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008)...............24

Mercado v. Allstate Ins. Co., 340 F.3d 824, 828 n. 3 (9th Cir.2003)................................32

*Mims v. Global Credit & Collection Corp* ................................................................20

*Mission Viejo Emergency Med. Assoc. v. Beta Healthcare Group*, No. G043815, 2011 WL 2565363, at *7, n.4 (Cal. Ct. App. June 29, 2011).........................................................6

Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001)....................................................24

Orkin Exterminating Co., Inc. v. FTC, 849 F.2d 1354 (11th Cir. 1988)............................32

*Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).................................................. 24

*Patterson v. ITT Consumer Financial Corp.*, 14 Cal.App.4th 1659 (1993)...................... 14

*Pokorny v. Quixtar, Inc.,* 601 F.3d 987, 997 (9th Cir. Cal. 2010) ....................................... 9

*Puentes v. Wells Fargo Home Mortg., Inc.*, 160 Cal. App. 4th 638, 645 (2008) ............... 32

*Ratcliff Architects v. Vanir Constr. Mgmt., Inc.*, 88 Cal. App. 4th 595, 604, 106 Cal. Rptr. 1 (2001)........................................................................................................................ 30

*Sanchez v. Valencia Holding Company, LLC*, No. B228027, 2011 WL 5565694, *7 (Cal. Ct. App. Nov. 23, 2011)......................................................................................................... 6

*Smith, Valentine & Smith, Inc. v. Superior Court*, 17 Cal.Rptr. 374 (1976)...................... 14

*Stirlen v. Supercuts, Inc.,* 51 Cal.App.4th at, 1532 (1997) ........................................... 7, 12

*Straus v. North Hollywood Hosp., Inc.,* 150 Cal.App.2d 306, 311, 309 P.2d 541 (1957).... 26

*Tucker v. CBS Radio Stations, Inc.*, 194 Cal. App. 4th 1246, 1252, 124 Cal. Rptr. 3d 245 (2011)........................................................................................................................ 29

*Wapato Heritage, L.L.C. v. United States*, 637 F.3d 1033, 1039 (9th Cir. 2011)................ 25

**Other Authorities**

9 U.S.C. §2.................................................................................................................... 5

30A C.J.S. *Equity* § 60 (2011).......................................................................................... 21

Bus. & Prof. Code §17204 as amended by Prop. 64, §3 .................................................... 32

Cal.Civ.Code §1638 ......................................................................................................... 26

Cal.Civ.Code §1643 ......................................................................................................... 26

Federal Arbiration Act §2 ................................................................................................. 5

Research in Motion Annual Report 2011 ........................................................................... 30

MEMORANDUM IN OPPOSITION TO MOTION TO COMPEL ARBITRATION OR IN THE
ALTERNATIVE TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

## I.   INTRODUCTION

Despite Defendants' arguments to the contrary, *Concepcion* is not controlling in this matter. *Concepcion* overruled the California Supreme Court's *Discover Bank* rule that deemed consumer arbitration agreements containing class action waivers unconscionable if the arbitration agreement was a contract of adhesion and the dispute involved small amounts of damages. *Concepcion* also specifically noted that §2 of the Federal Arbitration Act – its "savings clause" permits agreements to arbitrate to be invalidated by "generally applicable contract defenses, such  as fraud, duress, or unconscionability" but not by defenses that apply only to arbitration or  that derive their meaning from the fact that an agreement to arbitrate is at issue.[1]

The agreement in *Concepcion* that was approved by the U.S. Supreme Court contained a number of pro-consumer features that prevented the Court from finding that the agreement was substantively unconscionable.   Those pro-consumer features – conducting the arbitration near the consumer's residence, requiring AT&T to pay all arbitration fees and costs, authorizing the arbitrator to award declaratory and injunctive relief, allowing the consumer to recover all of their actual damages (or a minimum of $7,500.00 in some circumstances), and specifically requiring AT&T to pay a prevailing consumer's attorneys' fees (double in some circumstances), are completely absent in Defendants' arbitration agreement.

Under Defendants' arbitration scheme, Plaintiff would be required to travel to New York, NY to arbitrate his claim and pay more than $7,000.00 in arbitration fees and costs.   Moreover, Defendants' arbitration agreement purportedly limits Plaintiff's maximum recovery to $5.00, including his attorneys' fees.   Defendants' onerous scheme is designed to eliminate a consumer's ability to vindicate their claims and statutory rights – as evidenced by the fact that, unlike AT&T, the American Arbitration Association does not have a single record of any consumer ever successfully filing a demand for arbitration against Defendants.   Lastly, Defendants' arbitration agreement lacks bilaterality as they

---

[1] *AT&T Mobility LLC v Concepcion*, __ U.S. __ 131 S.Ct. 1740 (2011).

MEMORANDUM IN OPPOSITION TO MOTION TO COMPEL ARBITRATION OR IN THE ALTERNATIVE TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

1    have removed any claims they might have against the consumer from the scope of the

2    arbitration agreement.   For these and other reasons, Defendants' arbitration agreement is

3    both procedurally and substantively unconscionable and its motion to compel should be

4    denied.

5            For the reasons discussed herein, Defendants' premature motion to dismiss should

6    also be denied.    Should the Court deny Defendants' motion to compel arbitration,

7    Plaintiffs believe that the Court should also deny the motion to dismiss, without

8    prejudice, and set a new briefing schedule as part of the case management order.

## II.    STATEMENT OF FACTS

10          This action arises from an outage at a RIM data center on October 10, 2011, which

11   caused a worldwide service outage for BlackBerry users, leaving them without full text,

12   e-mail and/or other services for a period of time for which they were unfairly charged.

13   The significant outage lasted for more than a day, causing injury to Plaintiff and the

14   Class, who could not use their BlackBerry smartphones as intended and paid for during

15   the outage period.

### A.    Defendants' Relation to BlackBerry Smartphones

17          Defendants are one of the largest manufacturers of smartphones in the world.[2]

18   Defendants design, manufacture, market and sell wireless solutions including Blackberry

19   wireless communication devices/smartphones and associated equipment, software and

20   services.[3]  Users who purchase BlackBerry smartphones will purchase a monthly service

21   plan from a third-party wireless carrier for voice, email, and data service.[4]  As mentioned

22   above, Defendants also provide certain services for the BlackBerry smartphones devices.

23   In order to generate revenue, Defendants charge third-party carriers a monthly

24   infrastructure access fee to use Defendants' services in connection with a Blackberry

25   smartphone device.[5]   The third-party carriers pass this cost on to customers such as

26

27   [2] First Amended Complaint ("FAC"), at ¶ 17.
     [3] *Id.* ¶ 12.
28   [4] *Id.* ¶ 25.
     [5] *Id.* ¶ 28.

MEMORANDUM IN OPPOSITION TO MOTION TO COMPEL ARBITRATION OR IN THE
ALTERNATIVE TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

1    Plaintiff, thus Defendants receive a portion of the amount paid to the third-party carrier

2    each month – in relation to the services Defendants provide.[6]

3    **B.     Plaintiff's Blackberry Smartphone**

4            Plaintiff purchased a Blackberry smartphone, and subsequently entered into a

5    service agreement to use his BlackBerry smartphone. Plaintiff entered into a service

6    agreement with Sprint for voice, text, and data/internet/email.[7]   Despite Defendants'

7    contention, Plaintiff does not remember ever entering into a service agreement with

8    Defendants, but was aware that he was charged fees on this monthly bill from Sprint that

9    went to Defendants.[8]   Plaintiff, like thousands of other members of the Class, had active

10   voice and data service agreements with third-party carriers at all times relevant, including

11   between October 12 and 14, 2011.[9]

12           During the week of October 10, 2011, Defendants experienced a major outage in

13   its email system/data center preventing its customers in the United States and other

14   countries from using their BlackBerry smartphones as intended.[10] The initial outage was

15   caused by a failure of one of Defendants' core switches within the companies'

16   infrastructure.[11]   Further trouble began when Defendants' redundant systems failed as

17   well.[12]   All operations that contributed to the failure were under Defendants complete

18   control, and had nothing to do with third-party carriers.

19           It was these above mentioned failures that led to Plaintiff's action against

20   Defendants. These failures were caused by systems under the complete control of

21   Defendants. Plaintiff's action, on behalf of all those similarly situated, in no way involves

22   any of the third-party carriers whom can only be mentioned by mere implication.

23   Plaintiff's action seeks recovery from Defendants for their misconduct and failures.

24   Nothing else.

25   _____

26   [6] *Id.*
     [7] *Id.*
     [8] *Id.*

27   [9] *Id.* ¶ 27.
     [10] *Id.* ¶ 29.

28   [11] *Id.* ¶ 32.
     [12] *Id.*

C.   **Defendants' Software License Agreements**

Despite not being mentioned within the four corners of Plaintiff's Complaint, and despite the lack of any evidence proving that Plaintiff agreed to any of Defendants' Software License Agreements, Defendants' motion seeks to implicate multiple versions of its Software License Agreement, in order to compel Plaintiff to arbitrate his claim. Defendants' motion to compel is grounded on the fact that its Service License Agreements contain a similar arbitration provision, which Defendants claim Plaintiff must have agreed to in order to correctly operate his BlackBerry smartphone.

1.   **Software License Agreements**

Defendants claim that since August 2002, they have had in place a software license agreement ("SLA") which included an arbitration clause – the clause Defendants' motion is grounded on. (Doc. 13, at 11).[13]      As Defendants cannot prove how or whether Plaintiff actually agreed to the SLA in effect when Plaintiff purchased his BlackBerry, Defendants motion references every SLA Defendants have had in place since 2002. Defendants further describe how BlackBerry users, like Plaintiff, would have been forced to agree to the terms of the active SLA in order to operate their BlackBerry smartphone as intended.

Plaintiff believes that Defendants' motion to compel is premature, as Defendant cannot prove which of Defendants' SLA Plaintiff agreed to, or even that he has. With that said, assuming, *arguendo*, that Plaintiff had agreed to one form of Defendants' SLA, the terms of each SLA are similar enough to merit discussion as if only one exists.

Defendants' SLAs contain a provision labeled "Governing Law and Dispute Resolution", which provides in relevant parts as follows (emphasis added):

> Any disagreement or dispute arising out of or relating to this Agreement, or
> the breach thereof, which the Parties are unable to resolve after good faith
> negotiations, shall be submitted first to the upper management level of the
> Parties. The Parties, through their upper management level representatives,

---

[13] The current version of Defendants' software license agreement, the BlackBerry Solution License Agreement ("SLA") – in effect since May 2010, was attached as Exhibit "6" to the Declaration of Andrew Bocking (Doc. 13-1) ("Bocking Decl."). Bocking Decl, at ¶ 36. The SLA also contains an "Amalgamation of Agreements" provision replacing and superseding any previous and/or conflicting agreements between Defendants and BlackBerry users.

4

which if You are an individual, is You, shall meet within thirty (30) days of the dispute being referred to them. * * *

If You reside in the United States and the Software is shipped or delivered to You in any format in the United States, and if the Parties are unable to resolve such disagreement or dispute within thirty (30) days of meeting, except to the extent specifically prohibited by applicable law in Your jurisdiction, *such disagreement or dispute shall be settled by final and binding arbitration to be conducted in New York, New York* in accordance with the Commercial Rules of the American Arbitration Association (the "AAA Rules") and shall be heard by one arbitrator appointed in accordance with the AAA Rules and to be mutually agreed to by the Parties within thirty (30) days of the appointment of the arbitrator, failing which a neutral third party shall appoint the arbitrator. If the provisions of the foregoing are prohibited by law in Your jurisdiction, the arbitration shall be: (i) held in Your jurisdiction; (ii) settled by arbitration in accordance with the AAA Rules; and (iii) heard by one arbitrator appointed in accordance with the AAA Rules and to be mutually agreed to by the Parties within thirty (30) days of the appointment of the arbitrator, failing which a neutral third party shall appoint the arbitrator. *Each Party shall bear one half of the costs associated with the arbitration proceedings.*

No dispute between the Parties, or involving any person but You, may be joined or combined together, without the prior written consent of RIM. Judgment upon the award rendered by the arbitrator may be entered in any Court having jurisdiction thereof.

Notwithstanding the foregoing, *RIM has the right to institute legal or equitable proceedings, including proceedings seeking injunctive relief, in a court of law* for claims or disputes regarding: (i) amounts owed by You to RIM in connection with Your acquisition of Your BlackBerry Solution or any portion thereof, if applicable; and (ii) Your violation or threatened violation of the Sections of this Agreement entitled, "Desktop Cryptography Support" (Section 6), "Use of Your BlackBerry Solution" (Section 3), "Software and Documentation License" (Section 2), "Intellectual Property" (Section 7), "Export, Import and Use Restrictions and U.S. Government Licenses" (Section 9), "Security" (Section 10), "Confidentiality and No Reverse Engineering" (Section 11) and "Effect of Termination" (Section 14). You irrevocably waive any objection on the grounds of venue, forum non-conveniens or any similar grounds and irrevocably consent to service of process by mail or in any other manner permitted by applicable law and irrevocably consent, *submit and attorn to the jurisdiction of the courts located in the County of New York, New York for any such claims arising from or related to this Agreement.*[14] (Emphasis added).

As noted above, Plaintiff does not recall ever entering into any agreements with Defendants. If Plaintiff actually accepted Defendants' SLA, and thus the terms above, Plaintiff would have done so in a manner that would render Plaintiff blind as to the arbitration terms found above.[15]

---

[14] Bocking Decl., Exh. A ("SLA"), at § 26(d).
[15] FAC, at ¶ 12.

MEMORANDUM IN OPPOSITION TO MOTION TO COMPEL ARBITRATION OR IN THE ALTERNATIVE TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

## III.   APPLICABLE LAW

The U.S. Supreme Court has said the principle purpose of the Federal Arbitration Act ("FAA") is to ensure that private arbitration agreements are enforced according to their terms.[16] However, the FAA was not enacted to force parties into arbitration, but to enforce voluntary agreements to arbitrate specified disputes. Pursuant to Section 2 of the FAA, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds that exist at law or in equity for the revocation of any contract."[17]   The U.S. Supreme Court, in interpreting the same language found in section 2 of the FAA recognized that "generally applicable contract defenses, such as fraud, duress, or *unconscionability,* may be applied to invalidate arbitration agreements..."[18]   Under general contract law principles, arbitration provisions are subject to state law defenses applicable to all contracts, including unconscionability.[19]

The Court must therefore consider any defenses to the enforcement of an arbitration clause.[20]   The burden is on the Plaintiff to prove, by a preponderance of the evidence, "any fact necessary to [his] defense."[21]   Contrary to what Defendants would have the Court believe, *Concepcion* expressly recognizes that unconscionability remains a valid defense to enforcement of an arbitration clause.[22]   Thus, *Concepcion* "does not stand for the proposition that a party can never oppose arbitration on the ground that the arbitration clause is unconscionable."[23]   Here, the SLA is materially distinct from that at issue in *Concepcion*, unconscionable and should not be enforced.

---

[16]*AT&T Mobility LCC v. Concepcion,* _____U.S.___, 131 S. Ct. 1740, 1748 (2011).
[17]9 U.S.C. § 2.
[18]*Doctor's Associates, Inc. v. Casarotto, supra,* 517 U.S. 681, 687, 116 S.Ct. 1652, 134 L.Ed.2d 902, italics added.
[19]*See Id.*
[20]*See Concepcion,* 131 S. Ct. at 1746.
[21]*Arguelles-Romero v. Super.Ct.,* 184 Cal.App.4th 825, 836 (2010).
[22]*Concepcion,* 131 S.Ct at 1746 ("This savings clause [Section 2] permits agreements to arbitrate to be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability . . . .") (quotations and citations omitted).
[23]*Hamby v. Power Toyota Irvine,* No. 11CV544, 2011 WL 2852279, at *9 (S.D. Cal. July 18, 2011). *See also Mission Viejo Emergency Med. Assoc. v. Beta Healthcare Group,* No. G043815, 2011 WL 2565363, at *7, n.4 (Cal. Ct. App. June 29, 2011) ("Defendants appear to argue that [Concepcion] essentially preempts all California law relating to unconscionability. We disagree, as the case simply does not go that far."); *Sanchez v. Valencia Holding Company, LLC,* No. B228027, 2011 WL 5565694, *7 (Cal. Ct. App. Nov. 23, 2011) ("Before applying Armendariz to the present case, we note that *Concepcion* . . . does not preclude the application of the unconscionability doctrine to determine whether an arbitration provision is unenforceable."); *In re Checking Account Overdraft Litig.,* No. 09-MD-02036, 2011 WL 4454913, *4 (S.D. Fla. Sept. 1, 2011) ("Concepcion did not completely do away with unconscionability as a defense to the enforcement of arbitration agreements under the FAA").

6

# IV.   ARGUMENT

An arbitration provision will be deemed invalid if it can be shown that it is both procedurally and substantively unconscionable, however, not necessarily to the same degree.[24] The more an arbitration provision is shown to be substantively unconscionable, the less showing of procedural unconscionability is required, and vice versa.[25]

## A.   Defendants' Arbitration Provision Found in the SLA is Procedurally Unconscionable.

To determine whether the arbitration agreement is procedurally unconscionable a court must examine "the manner in which the contract was negotiated and the circumstances of the parties at that time."[26] An inquiry into whether the Defendants' arbitration agreement involves oppression or surprise is central to that analysis. A contract is oppressive if an inequality of bargaining power between the parties precludes the weaker party from enjoying a meaningful opportunity to negotiate and choose the terms of the contract.[27]

The procedural element of an unconscionable contract generally takes the form of a contract of adhesion," which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it."[28] Courts have found arbitration clauses oppressive, and thus procedurally unconscionable, when the one side has considerably more bargaining power; the arbitration provision is used as a standard form arbitration provision; and the terms are non-negotiable "take it or leave it" terms.[29]

In the current matter it isn't even clear how Plaintiff or other Class members were presented with Defendants' arbitration agreement. Defendants state that Plaintiff either

---

[24] *See Armendariz v. Foundation Health Psychcare Serv., Inc.* 24 Cal. 4th 83 (2000) and *Concepcion, at 1746.*
[25] *Id.*
[26] *Kinney v. United Healthcare Servs., Inc.,* 70 Cal.4th 1322, 1329 (1999).
[27] *Stirlen v. Supercuts, Inc.,* 51 Cal.App.4th at, 1532 (1997) (citation omitted).
[28] *Little v. Auto Stiegler, Inc.,* 29 Cal. 4th 1064, 1071 (Cal. 2003), citing *Armendariz v. Foundation Health Psychcare Services, Inc.,* 24 Cal. 4th 83, 113 (Cal. 2000).
[29] *See Circuit City Stores, Inc. v. Adams,* 279 F.3d 889, 893 (9th Cir. 2002)(holding an arbitration provision procedurally unconscionable when Circuit City possessed considerably more bargaining power than nearly all of its employees or applicants, drafted the contract and used it as its standard arbitration agreement for all of its new employees, and the agreement was a prerequisite to employment, and job applicants were not permitted to modify the agreement's terms-they had to take the contract or leave it.).

accepted the SLA through a third-party server administrator, who would have accepted the SLA on behalf of the Plaintiff, if Plaintiff was an "enterprise user"[30] or Plaintiff accepted the SLA when he agreed to the "Prosumer Addendum" that references the SLA and notifies the user that acceptance of the Prosumer Addendum constitutes an agreement to be bound by the SLA as well.[31] Even the most diligent, thoughtful consumer would be hopelessly confused by this presentation. This is made evident by the fact that Plaintiff wasn't even aware of the fact that he had an agreement of any kind with Defendants.[32]

Defendants' admissions in their motion support the notion that the arbitration provision was presented to Plaintiff and other Class members on a "take it or leave it" basis. Defendants confirm that the SLA is a contract of adhesion, noting that "[u]sers cannot utilize personal email, business email, or the BlackBerry Desktop software without accepting the SLA or an agreement or notice explicitly incorporating the SLA."[33]

As with all class members, Defendants' arbitration provision was presented to Plaintiff in a contract of adhesion similar to that in *Adams*. Defendants possessed considerably more bargaining power than Plaintiff and all Class members; drafted the contract and used it as its standard arbitration agreement for all BlackBerry smartphone users; the agreement was a prerequisite to enjoying any of the BlackBerry "smartphone" capabilities. For these reasons, Defendants' arbitration provision is procedurally unconscionable. Lastly, Defendants' own description of how its customers "accept" the SLA either by opening a box or clicking a button to move to the next screen, without any possibility of negotiating terms, confirms that Defendants SLA is a procedurally oppressive contract of adhesion.[34]

---

[30] Doc 13 at 13.
[31] *Id.*
[32] FAC ¶ 12.
[33] Doc. 13 at 17.
[34] *See* Bocking Declaration (Doc. 13-1), at ¶ 20-31.

Based on California state court and Ninth Circuit precedent, it is clear that Defendants' arbitration clause is procedurally unconscionable as it relates to Plaintiff and members of the Class.

## B. Defendants' Arbitration Provision Found in the SLA is Substantively Unconscionable

Substantive unconscionability focuses on the terms of the agreement and whether those terms are "overly harsh" or "one-sided."[35] A contractual provision that is substantively unconscionable "may take various forms, but may generally be described as unfairly one-sided."[36]

There are at least four aspects of Defendants' arbitration provision found in the SLA that make it substantively unconscionable:

(i)     The SLA lacks mutuality.  It only requires Plaintiff and Class members to arbitrate any and all claims they might have against Defendants. In contrast, any claims that Defendants may have <u>are not</u> subject to arbitration and can be filed in court in New York;

(ii)    *The SLA limits the damages* that can be sought by Plaintiff and Class members against Defendants in any action arising out of the SLA, including *attorney's fees, to the greater of:* (a) the amount paid by Plaintiff or Class members for the RIM Product(s) and/or for that portion of the Software that gave rise to the claim; and (b) *five United States dollars ($5.00)*;

(iii)   The SLA unilaterally sets the place and method by which any arbitration must take place for United States residents – New York, New York under the American Arbitration Association's Commercial Rules, which each party responsible for half of the costs; and,

(iv)    The SLA allows Defendants to file its claims against class members in court, but in New York, making it practically impossible for a class member to defend.

### 1.     <u>The SLA's Arbitration Agreement Lacks Mutuality</u>

"Substantive unconscionability addresses the fairness of the term in dispute."[37]"Thus, mutuality is the "paramount" consideration when assessing substantive

---

[35] See *Armendariz* 24 Cal.4th at 114 ; *Little v. Auto Stiegler, Inc.*, 29 Cal. 4th at 1071; *Lhotka v. Geographic Expeditions, Inc.*, 181 Cal. 4th 816, 824–826 — arbitration provision was substantively unconscionable for numerous reasons (limits on damages, indemnity provision calling for payment of company's legal fees in certain circumstances, absence of agreement as to sharing of arbitration costs and lack of mutuality).
[36] *Little*, 29 Cal.4th at 1071.
[37] *Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 997 (9th Cir. Cal. 2010).

9

1   unconscionability."[38]   "Agreements to arbitrate must contain at least 'a modicum of

2   bilaterality' to avoid unconscionability."[39]An arbitration agreement imposed in an

3   adhesive context lacks the basic fairness and mutuality if it requires one contracting party,

4   but not the other, to arbitrate all claims arising out of the same transaction or occurrence

5   or series of transactions or occurrences.[40]

6        In *Armendariz*, the court found lack of mutuality in an arbitration agreement

7   contained in an employment contract because it required all employees, but not the

8   employer, to arbitrate claims associated with a wrongful termination.[41] An arbitration

9   provision which permits one side to consider the advantages and disadvantages of a

10  particular forum while prohibiting the other side from having the same opportunity lacks

11  mutuality and can be considered substantively unconscionable.[42]

12       The arbitration provision found in Defendants' SLA is even more expansive than

13  the arbitration provision in *Armendariz*. Defendants' arbitration provision requires

14  Plaintiff and Class members to arbitrate "[a]ny disagreement or dispute arising out of or

15  relating to this [SLA], or the breach thereof."   This requirement to arbitrate lacks

16  mutuality as it only applies to Plaintiff and the Class members. Defendants, in contrast,

17  remain free to litigate their claim against class members in court.   The SLA reads

18  "[n]otwithstanding the foregoing, RIM has the right to institute legal or equitable

19  proceedings, including proceedings seeking injunctive relief, in a court of law for claims

20  or disputes regarding: …: (i) amounts owed by [Plaintiff] to RIM in connection with

21  [Plaintiff's]acquisition of [Plaintiff's]BlackBerry Solution or any portion thereof.[43] Thus,

22  Defendants can file suit against Plaintiff and Class members for any amounts of money

23  claimed owed to them for their BlackBerry service or software, but Plaintiffs and Class

24

---

25  [38]*Id.*, citing *Abramson v. Juniper Networks, Inc.*, 115 Cal. App. 4th 638, 9 Cal. Rptr. 3d 422, 436 (Ct. App. 2004).
    [39]*Id.*, at 998.
    [40]*Armendariz*, 24 Cal.4th at 120 (2000).
26  [41]*Id.* (finding an arbitration agreement substantively unconscionable and lacking mutuality because it required employees,
    but not employers, to arbitrate all claims related to wrongful termination.
    [42]*See Id.* at 119-121.
27  [43] Defendants' SLA further limits the forum of any legal proceedings to the Count of New York, New York. Therefore,
    even if Defendants decided to initiate legal proceedings against Plaintiff, Plaintiff would be forced to travel to New York
28  from California.

MEMORANDUM IN OPPOSITION TO MOTION TO COMPEL ARBITRATION OR IN THE
ALTERNATIVE TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

members are relegated to arbitration in the event that Defendants owe them any relief, such as here. Mutuality is completely lacking, creating oppression and fundamental unfairness. Not only that, the SLA allows Defendants to file their claims against Plaintiff in court in New York, making it practically impossible for an individual California resident, like Plaintiff, to respond.

Likewise, Defendants' class action waiver also lacks mutuality. The SLA prohibits Plaintiff and Class members from joining or combining their actions against Defendants without RIM's written consent. As a result, the waiver is illusory in that RIM can elect to allow class or collective actions if it chooses to, yet bind Plaintiff and Class members with a class action waiver in all other circumstances. Plaintiff's consent is not required – only Defendants.

Last August, another court in the Central District determined that a similar arbitration agreement was unenforceable. In *Delong, et al. v. TaxMasters, Inc., et al.*, the district court ruled that an arbitration agreement was both procedurally and substantively unconscionable because "the arbitration agreement lacks at least 'a modicum of bilaterality' because it does not require Defendants to use arbitration in settling its disputes nor do Defendants bear any burden for the costs of arbitration."[44] Here, the SLA allows Defendants to file suit against Plaintiff to recover amounts due for services, but does not allow Plaintiff to file suit against Defendants. For the purposes of this analysis, the SLA and the *TaxMasters* agreement are identical.

Mutuality is a paramount factor in determining substantive unconscionability. Defendants' SLA unilaterally imposes arbitration and provides for a class action prohibition on Plaintiff and Class members, without subjecting itself to the same. Therefore, Defendants' SLA is substantively unconscionable.

/ / /

/ / /

---

[44] *Jeffrey Delong, et al. v. TaxMasters, Inc., et al.*, Case No.: 11-01431-ODW, Order Granting in Part and Denying in Part Motion to Dismiss (Doc. 55), at 5-6, (C.D. Cal., 2011) (Exh. Q to Marker Decl.).

11

### 2.     RIM Artificially Limits Its Customer's Recovery in Arbitration While Not Imposing any Such Limit on Itself

In determining substantive unconscionability, courts will also consider the extent to which the arbitration provision limits the amount a party can recover in arbitration. Here, Defendants arbitrarily cap Plaintiff's recovery, making the SLA substantially unconscionable.

In *Lhotka v. Geographic Expeditions, Inc.*,[45] the court considered whether an arbitration provision which, among other things, required that all claims be (i) arbitrated in San Francisco; (ii) governed by California law; and (iii) limited damages, of any sort whatsoever, to the sum of land and air costs spent on a trip with the defendant. In discussing the limitation of damages provision the court considered the one-sided effect of that provision and noted that it "guaranteed that Plaintiffs could not possibly obtain anything approaching full recompense for their harm by limiting any recovery they could obtain to the amount they paid GeoEx for their trip."[46] The court noted the one-sided effect of the provision was only heighted because the provision required plaintiffs to "arbitrate in San Francisco – all but guaranteeing both that GeoEx would never be out more than the amount plaintiffs had paid for their trip, and that any recovery plaintiffs might obtain would be devoured by the expense they incur in pursuing their remedy."[47]

Courts are more likely to find substantive unconscionability when an arbitration provision restricts remedies and the restriction is only subjected to one party. In *Stirlen v. Supercuts, Inc.*,[48] while considering the remedy restrictions in an employment arbitration provision, the court took particular notice of the fact that only employees were subject to the restrictions/limitations. In addressing Supercuts' argument that the remedy restrictions apply to them as well as employees the court stated: "[t]he mandatory arbitration requirement can only realistically be seen as applying primarily if not exclusively to claims arising out of the termination of employment, which are virtually certain to be

---

[45] *Lhotka v. Geographic Expeditions, Inc.*, 181 Cal.App.4th 816 (2010).
[46] *Id.* at 825.
[47] *Id.*
[48] *Stirlen v. Supercuts, Inc.*, 51 Cal.App.4th 1519 (1997).

MEMORANDUM IN OPPOSITION TO MOTION TO COMPEL ARBITRATION OR IN THE ALTERNATIVE TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

1   filed against, not by Supercuts."[49] Thus, the court decided that the restrictions on

2   remedies only applied to Stirlen, holding that such restrictions are against public policy.[50]

3   The matter before the Court now is similar to both of the above outlined cases.

4   Defendants' SLA limits Plaintiff's recovery to the greater of the amount Plaintiff has

5   already spent on Defendants' products or $5.00. SLA §20(b).

6   As the court in *Lhotka* notes, this restricts Plaintiff's ability to be fully

7   compensated for any wrong doing on the part of Defendants.  Plaintiff would not be

8   entitled to any equitable relief they would otherwise be entitled to. Further, the one-sided

9   effect of this limitation on remedies is only heightened by the fact that Plaintiff and Class

10  members would be forced to travel to New York to arbitrate, at considerable additional

11  cost. This all but guarantees that Defendants will never be out more than the amount

12  Plaintiff and Class members have paid to them, and any recovery obtained by Plaintiff

13  would be completely devoured by the expense of pursuing his remedy.

14  Comparing the facts here to those of *Stirlen,* the limitation on remedies in

15  Defendants SLA would only affect Plaintiff and Class Members. The SLA goes further

16  than the agreement in *Stirlen*. In *Stirlen* the court concluded the remedy restrictions only

17  applied to employees because arbitration was only limited to disputes arising from

18  wrongful termination – actions exclusively brought by employees. In this case, a court

19  wouldn't even need to make this inference, as Plaintiff and Class members are the only

20  parties subject to the arbitration provision and the limitation on liability.  Defendants have

21  exempted themselves from the SLA and expressly refused their right to pursue all

22  remedies of their choosing in court without limitation for lack of mutuality.

23  Considering all of the above, Defendants' arbitration provision is substantively

24  unconscionable. Defendant has limited the remedies which Plaintiff and Class members

25  could recover in arbitration; the remedies are limited to an amount equal to that which

26  Plaintiff and Class members have already paid Defendants; any amount recovered by a

27

28  [49] *Stirlen,* 51 Cal.App.4th at 1540-1541 (1997).
    [50] *Id.* at 1540.

1  Plaintiff and Class members will be devoured by the costs of pursuing the remedy; and

2  the limitation of the remedy is only applicable to Plaintiff and Class members, not

3  Defendants.

4  ### 3.   The SLA Requires Arbitration Under Terms That Prevent

5  Consumers From Pursuing and Vindicating Their Claims.

6  Generally, forum selection clauses are valid and may be given effect, in the court's

7  discretion and in the absence of a showing the enforcement of such a clause would be

8  unreasonable.[51] As noted, the contractual provision at issue here is an arbitration provision

9  in which Defendants have unilaterally set the place all residents of the United States must

10  arbitrate to New York, New York.

11  Arbitration agreements have been found to be substantively unconscionable when,

12  among other things, it limits arbitration to unreasonable locations.[52] In *Patterson,* an

13  adhesive loan agreement requiring California borrowers to submit to binding arbitration

14  in Minnesota was held "unconscionable." The court noted that although arbitration itself

15  may be within the reasonable expectations of consumers, a Minnesota venue is not. In

16  addition, the consumer was required to make a prompt demand and prepay fees in order

17  to obtain a participatory hearing. The likely effect was to deny a hearing to most

18  borrowers, particularly because of the small amounts in controversy.[53]

19  Defendants' SLA purportedly requires Plaintiff, and any other American

20  BlackBerry users, to travel to New York to arbitrate any claim that arises out of the SLA

21  under the American Arbitration Association's Commercial Rules ("AAA Rules").[54]

22  Plaintiff Eric Mitchell resides in Sherman Oaks, California.

23  In addition to travel costs for Mitchell and his California based counsel, under the

24  AAA Rules, the parties must pay several fees. To initiate arbitration, Plaintiff would be

---

[51] *Aral v. EarthLink, Inc.,* 134 Cal. App. 4th 544, 557 (2005) (citing *Smith, Valentine & Smith, Inc. v. Superior Court,* 17 Cal.Rptr. 374 (1976)).

[52] *See Patterson v. ITT Consumer Financial Corp.,* 14 Cal.App.4th 1659 (1993).

[53] *Id.* at 1665-1666 (1993) (holding the arbitration clause as being both beyond the reasonable expectation of the borrower and as substantively and procedurally unconscionable, because the result would be the same).

[54] A true and correct copy of the AAA rules are attached as Exhibit "A" to the Declaration of Caleb Marker ("Marker Decl."). The current rules have been effective since June 1, 2009, prior to the current version of Defendants' SLA.

14

required to pay an initial filing fee of $775.00 and later a final fee of $200.00 ($975.00 total).[55]  If Plaintiff seeks injunctive relief (as here), an additional $3,350.00 filing fee and $1,250.00 final fee must be paid ($4,600.00 total).[56]   No limitation for arbitrator compensation is set by the AAA Rules; however Plaintiff is informed that AAA neutrals typically charge a median rate of $450.00 per hour for their services in New York.[57] Here, if the matter was arbitrated on an individual basis, the low-end cost of a 3-day hearing with an AAA arbitrator would be approximately $8,100.00.[58]  In addition, AAA charges $750.00 for use of a conference room for three days at their New York office.[59]All together, these costs equal $14,425.00, which Defendants' SLA requires Plaintiff to pay half – $7,212.50.  Lastly, travel costs for Plaintiff and an attorney to travel from Los Angeles to New York would exceed $2,812.00.[60]

Thus if Defendants' SLA is enforced, Plaintiff would be required to pay at least $10,024.50 in order to arbitrate a claim that the SLA limits Defendants "maximum...aggregate liability" to $5.00.[61]  No rational person would do that.  If that weren't enough of a deterrent, if Plaintiff was successful in obtaining an arbitration award against Defendants, the SLA includes two provisions for awarding attorneys' fees <u>to Defendants</u>, but <u>none</u> that would allow a similar award to a prevailing consumer.[62] Without fee shifting, no matter how strong the case is, no attorney would be willing to agree to represent a consumer whose recovery is purportedly limited to $5.00 (or even $1,000.00 on an individual basis).[63]

[55] Marker Decl., at ¶5 and Exh.A attached thereto, at 54.
[56] *Id.*, at ¶6.
[57] Marker Decl., at ¶9-12.
[58] Marker Decl., at ¶13 (estimating a three-day hearing (18 hours total) necessary to arbitrate this issue based on prior experience with AAA).  18 hours X $450.00 per hour equals $8,100.00.
[59] Marker Decl., at ¶8.
[60] Marker Decl., at ¶14,15. Travel costs would exceed $1,406.00 per person ($286.00 for airfare and $1,120.00 for hotel accommodations for four days at a Hampton Inn in New York).
[61] SLA, at §20(b) ("Limitation of Liability... To the maximum extent permitted by applicable law, in no event shall the aggregate liability of RIM exceed the greater of: (i) the amount paid by You for the RIM Product(s), and/or for that portion of the Software (as the case may be) that gave rise to the claim; and (ii) five (5) United States dollars.")
[62] SLA, at §§ 14-15.
[63] *See generally* Declarations of Samuel A. Wong (Irvine, CA); Vildan A. Teske (Minneapolis, MN); William H. Crowder (Minneapolis, MN); Daniel C. Hedlund (Minneapolis, MN); Richard J. Fuller (Minneapolis, MN); Jeffrey A. Hank (Lansing, MI); and, Tina Wolfson (Los Anges, CA), attached as Exhibits J, K, L, M, N, O, and P, respectively, to the Marker Decl.  These attorneys, practicing in different cities across the United States, regularly represent consumers in cases, but would not represent an individual under the terms described in the SLA.

15

It's clear that any arbitration award to a Plaintiff would be obliterated by the costs of seeking that remedy. This would have the effect of causing Plaintiff and other Class members to completely forgo seeking recovery for any wrong doing by Defendants.[64] Therefore, just as was found in *Patterson*, Defendants' SLA should be considered unenforceable as it is substantively unconscionable.  In contrast to the AT&T clause at issue in *Concepcion*, RIM's SLA is clearly aimed at preventing vindication of valid claims, not providing a fair mechanism to resolve them.

In 2003, the California Supreme Court noted that "[n]othing in the United States Supreme Court case law leads [it] to believe that a state requirement shifting arbitration costs in mandatory employment agreements to the employer pursuant to established state law contract doctrine [so that the remedy of prosecuting state statutory or common law public rights through arbitration is not rendered illusory] violates the FAA."[65]  In *Little*, the Court was faced with an arbitration agreement that was silent on the issue of costs, from which it inferred that the employer would bear all arbitration costs. Here, the SLA is very clear that "[e]ach Party shall bear one half of the costs associated with the arbitration proceedings."[66]  The California Supreme Court's decision in *Little* was influenced by the U.S. Supreme Court's decision in *Green Tree Fin. Corporation-Alabama v. Randolph*,[67] from which it quoted the following:

> It may well be that the existence of large arbitration costs could preclude a litigant such as Randolph from effectively vindicating her federal statutory rights in the arbitral forum. But the record does not show that Randolph will bear such costs if she goes to arbitration. Indeed, it contains hardly any information on the matter. As the Court of Appeals recognized, 'we lack . . . information about how claimants fare under Green Tree's arbitration clause.' [Citation].

*Green Tree* recognized that large arbitration costs can preclude a litigant such as Plaintiff from effectively vindicating his statutory rights, but required that the party opposing arbitration bear the burden of proving that the claims are unsuitable for

---

[64]Mitchell Decl., at ¶¶12-14 (confirming that if compelled to arbitration, Plaintiff could not afford to pay the costs necessary to pursue his claim against Defendants).
[65]*Little*, at 1080.
[66]SLA, at §26(d).
[67]531 U.S. 79 (U.S. 2000).

MEMORANDUM IN OPPOSITION TO MOTION TO COMPEL ARBITRATION OR IN THE
ALTERNATIVE TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

1    arbitration.[68]  Here, Plaintiff has demonstrated that he will be forced to pay approximately

2    $7,212.50 plus travel costs to vindicate his individual claims that the SLA limits to $5.00.

3    If Plaintiff and the putative class' claims are compelled to arbitration, the requirement to

4    pay half of the AAA arbitration costs and travel to New York will prevent Plaintiff and

5    Class members from vindicating their statutory rights arising under the CLRA and

6    UCL.[69]

7         The Ninth Circuit recently discussed the tensions between *Green Tree* and

8    *Concepcion* in *Coneff v. AT & T Corp.*[70]  In *Coneff* the Plaintiffs argued that any tension

9    must be resolved by reading an implied exception into *Concepcion;* specifically, they

10   argued that *Concepcion's* rule permits state law to invalidate class-action waivers when

11   such waivers preclude effective vindication of statutory rights.[71]  The Ninth Circuit

12   disagreed with Plaintiffs, noting that in that factual situation they did not see *Concepcion*

13   as being inconsistent with *Green Tree*.  Similar to *Concepcion*, *Coneff* was decided in the

14   context of AT&T's pro-consumer arbitration provision.  As the Ninth Circuit stated in

15   *Coneff*:[72]

16        Although Plaintiffs argue that the claims at issue in this case cannot be
          vindicated effectively because they are worth much less than the cost of
17        litigating them, the *Concepcion* majority rejected that premise.
          Significantly, the arbitration agreement here has a number of fee-shifting
18        and otherwise pro-consumer provisions, identical to those in *Concepcion*.

19        Critically, those provisions are completely absent from the SLA at issue here.  The

20   AT&T agreement upheld in both *Concepcion* and *Coneff* is markedly different from

21   Defendants' in the current matter.  Rather than requiring a consumer to travel to New

22   York as the SLA here does, AT&T's agreement requires arbitration near the consumer's

23   residence.[73]  More importantly, AT&T did not require consumers to pay $7,212.50 to

24   conduct an arbitration.  In contrast, AT&T was required to pay for *all* costs and

25   _____

26   [68] *Green Tree*, at 92.
     [69] Mitchell Decl., at ¶¶13-14.
     [70] 673 F.3d 1155 (9th Cir. 2012).
27   [71] *Id.*
     [72] *Id.* (citing *Cruz v. Cingular Wireless, LLC*, 648 F.3d 1205, 1215 (11th Cir.2011) (emphasis omitted) (quoting
28   *Concepcion*, 131 S.Ct. at 1753).
     [73] *Concepcion*, at 1744.

                                                          17

arbitrator's fees.[74]   Lastly, the AT&T agreement "denie[s]AT&T any ability to seek reimbursement of its attorney's fees, and [under certain circumstances] requires AT&T to pay... twice the amount of the claimant's attorney's fees."[75]   In addressing the dissent in *Concepcion*, Justice Scalia confirmed that, under AT&T's arbitration scheme for fees and costs, the consumer's claim was unlikely to go unresolved given the incentives provided.[76]   Here, the exact opposite is true. RIM's SLA creates huge barriers and obstacles that no rational consumer could be expected to overcome to fairly pursue their dispute and vindicate their substantive rights.

It is possible to examine the differences between the arbitration agreements in the real world and not just hypothetically.   As required under various state laws, AAA publishes data sets listing every consumer arbitration filed with AAA in the United States.   Since 2007, consumers have filed demands for arbitration against AT&T 125 times.[77]   Hyundai, a foreign manufacturer similar to RIM, has sold 2 million cars in the United States since 2008 and has been involved in 55 consumer arbitrations.[78] *Since 2008, RIM has shipped approximately 47 million BlackBerry smartphones to the United States, but has not been involved in a single consumer arbitration.[79]* Zero!  Plaintiff believes that RIM's perfect record has little to do with the quality or reliability of their 47 million devices or service, but rather the oppressive and expensive nature of its arbitration agreement.   In short, the clause has a perfect track record in burying consumer claims and ensuring that they never see the light of day.

As Justice Mosk recently noted in writing for a unanimous California Supreme Court, the "protection of unwary consumers from being duped by unscrupulous sellers is an exigency of the utmost priority in contemporary society."[80]   The arbitration agreement in the SLA is substantively unconscionable because the imposition of significant

---

[74] *Id.*
[75] *Id.*
[76] *Id.* at 1753.
[77] Marker Decl., at ¶18 and Exh. F.
[78] Marker Decl., at ¶19, 21 and Exh. G.
[79] Marker Decl., at ¶18.
[80] *America Online, Inc. v. Superior Court*, 90 Cal. App. 4th 1, 17 (Cal. App. 1st Dist. 2001).

18

arbitration costs, damage caps and inconvenience exposes those same consumers to harm from a business by precluding Plaintiff and similar litigants from effectively vindicating their claims against Defendants.

For the above stated reasons Defendants' arbitration provision found within its SLA is procedurally and substantively unconscionable.

**A.     The Court Need Not Consider Equitable Estoppel Because the Express, Written Contracts Between Plaintiff and Sprint Do Not Indicate Intent to Arbitrate with Defendants.**

In their motion, Defendants contend that this Court should compel arbitration, notwithstanding the SLA, as Plaintiff's carrier contract with Sprint contains an arbitration provision. (Doc. 13, at 18). Defendants' contention is premised on the theory of equitable estoppel.

Plaintiff's contract with Sprint contains an arbitration clause, but also contains a limitation as to who may arbitrate under that arbitration clause, and Defendants are not authorized parties under the agreement. Therefore, this Court need not reach the issue of equitable estoppel at all, as the plain reading of the relevant contract indicates that it is inappropriate for Plaintiff to be compelled to arbitrate with Defendants via the theory of equitable estoppel.

**1.     The Court Should Give Effect to the Plain Language of Sprint's Arbitration Clause, Which Expressly Limits Mandatory Arbitration to Disputes Between Sprint and Its Customers.**

In seeking to compel Plaintiff to submit his claims to arbitration based upon the theory of equitable estoppel via Sprint's Agreement with Plaintiff, Defendants go straight to the conclusion without even analyzing the arbitration provision that it seeks to invoke. By doing so, Defendants skip the first step in determining whether a valid arbitration agreement exists. When a court is faced with a motion to compel arbitration based on an arbitration agreement, the court must first determine whether a valid arbitration

MEMORANDUM IN OPPOSITION TO MOTION TO COMPEL ARBITRATION OR IN THE ALTERNATIVE TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

agreement exists.[81] When parties create valid arbitration agreements, the parties to the agreement are entitled "to limit *with whom* [it] will arbitrate its disputes."[82]

Sprint's Agreement expressly limits to whom its arbitration clause applies, and that clause <u>does not</u> include Defendants, therefore, equitable estoppel should not even be considered.  In this regard, *Mims v. Global Credit & Collection Corp.*[83] is instructive.  In *Mims*, a debt collector sought to compel arbitration based on a credit agreement between the plaintiff and his creditor which contained an arbitration provision.[84] The arbitration provision covered claims "between you and us," and it defined "us" as including the "[the creditor], its successors, assigns, agents, and/or authorized representatives."[85] The court found:

> [I]n defining "us" as referring only to certain enumerated categories of individuals, the parties evidenced a clear intent that the arbitration provision only apply to disputes between Plaintiff and those specific individuals. Consequently, the Court will not construe the provision as limitlessly expanding that definition.[86]

Like the arbitration provision at issue in *Mims*, the express terms of the arbitration provision in Sprint's Agreement explicitly limit arbitration disputes to those between Plaintiff and the enumerated categories of persons and entities – specifically, "[Sprint's] employees, agents, affiliates, or other representatives." (Doc. 13-2 at 23). <u>None</u> of these entities includes RIM. "Plaintiff thus cannot fairly be considered to have consented to arbitration with other unenumerated entities."[87] As such, this Court should give effect to the plain language of the provision and need not consider whether equitable estoppel applies.

---

[81] *Chastain v. Union Sec. Life Ins. Co.*, 502 F.Supp.2d 1072, 1075 (C.D.Cal. 2007); *Chiron Corp v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).
[82] *Concepcion*, 131 S.Ct. at 1749.
[83] No. 10-23830-CIV, 2011 WL 3586056 (S.D. Fla. Aug 12, 2001)
[84] *Id.* at *1.
[85] *Id.*
[86] *Id.* at *6; *see also Fox v. Nationwide Credit, Inc.*, No. 09-cv-7111, 2010 WL 3420172, at *4 (N.D. Ill. Aug. 25, 2010) (denying nonsignatory's motion to compel where agreement "expressly and specifically limited" the claims subject to arbitration "to those between the [plaintiff] and a defined list of persons and entities"); *Hornicek v. Cardworks Servicing, LLC*, No. 10-3631, 2001 WL 2623274, at *3 (E.D. Pa. June 29, 2011) (compelling arbitration because nonsignatory "falls squarely within one of the enumerated categories with which [plaintiff] has agreed to arbitrate").
[87] *Mims*, 2011 WL 3586056, at *6.

20

### 1. Equitable Estoppel Is Improper Given The Existence of An Express Agreement.

Equitable relief cannot be granted where the rights of the parties are governed by an express, valid contract.[88] Consistent with this principle, some courts have found that the existence of a separate agreement between the parties litigating a motion to compel arbitration precludes equitable estoppel.[89]

In *Ervin v. Nokia, Inc.,* the Illinois Appellate Court refused to extend a mobile carrier's arbitration agreement to a dispute between a consumer and Nokia, the manufacturer.[90]   The facts in *Ervin* are nearly identical to this matter.   Both plaintiffs purchased cell phones manufactured by the defendants and subscribed to a third-party carrier's service.  The manufacturer, Nokia, attempted to take advantage of the arbitration clause in carrier (AT&T's) service contract with the consumer.  The court in *Ervin* flatly rejected this holding that: (1) the manufacturer was not party to the service contract; (2) the manufacturer was not the principal or agent of the service provider, and; (3) the manufacturer was not a third-party beneficiary of the service contract.  As such, the Court denied the manufacturer's motion to compel arbitration reasoning that plaintiff "took no action from which Nokia could have reasonably relied on to its detriment that [plaintiff] had agreed to arbitrate any claim he had against Nokia" and to compel arbitration would unfairly deny plaintiff access to the courts.[91]

As Defendants argue, the rights between Plaintiff and Defendants are governed by Defendants' SLA. Notwithstanding the fact that Plaintiff believes Defendants' arbitration provision found within the SLA is unconscionable, it is this agreement which governs the relationship between Plaintiff and Defendants'. Equity does not stand if this Court allows Defendant to simply piggyback off of Sprint's Agreement which in no manner

---

[88] 30A C.J.S. *Equity* § 60 (2011) ("[E]quitable remedies will not lie where the rights of the parties are governed by a valid contract.").

[89] *See Goldman v. KPMG LLP,* 92 Cal. Rptr. 3d 534 (Cal. Ct. App. 2009); *See also In re Merrill Lynch Trust Co. FSB,* 235 S.W.3d 185, 191 (Tex. 2007) (finding nonsignatories had no right under arbitration agreement where the agreement "referred to some affiliates and third parties, but not [the nonsignatories]," those nonsignatories "signed their own contracts with the plaintiffs, which had no arbitration clauses," and where allowing them "to compel arbitration would effectively rewrite their contracts").

[90] *Ervin v. Nokia, Inc.,* 349 Ill. App. 3d 508 (Ill. App. Ct. 5th Dist. 2004)

[91] *Id.,* at 515-517.

MEMORANDUM IN OPPOSITION TO MOTION TO COMPEL ARBITRATION OR IN THE ALTERNATIVE TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

encompasses RIM. This is particularly true if this Court agrees with Plaintiff and finds Defendants' arbitration provision unconscionable.

### 2.   No "Rare Circumstances" Are Present To Warrant Equitable Estoppel

Defendants have the burden of showing that equitable estoppel applies.[92] Under all potentially applicable iterations of the elements of equitable estoppel, in particular the theory of being "intimately founded in and intertwined," Defendants fail to meet their burden.    Additionally, the federal policy favoring arbitration does not apply to Defendants' motion. "The question here is not whether a particular issue is arbitrable, but whether a particular party is bound by the arbitration agreement. Under these circumstances, the liberal federal policy regarding the scope of arbitrable issues is inapposite."[93]

### 3.   Defendants' Motion Fails Because Defendants Cannot Show that Plaintiff's Claims Are Intertwined with Sprint's Agreement.

In determining whether to apply equitable estoppel, "the *sine qua non...*is that the claims the plaintiff asserts against the nonsignatory must be dependent upon, or founded in an *inextricably intertwined* with, the underlying contractual obligations of the agreement containing the arbitration clause."[94] Thus, the intertwined-claims test permits equitable estoppel "only if the plaintiffs' claims against the nonsignatory are dependent upon, or inextricably bound up with, the *obligations imposed by* the contract plaintiff has signed with the signatory defendant."[95] A signatory cannot on the one hand, seek to hold the nonsignatory liable pursuant to duties imposed by the agreement, which contains an arbitration provision, but, on the other hand, deny the arbitration's applicability because the defendant is a nonsignatory.[96]

---

[92] *See Just Film, Inc., v. Merchant Servs., Inc.,* 2011 WL 3809908, at *6 (N.D. Cal. Aug. 29, 2011) (stating that "parties seeking to invoke estoppel, have the burden to show that it applies"); *Cal Chiropractic Ass'n v. Am. Specialty Health Plans, Inc.,* No. D039238, 2003 WL 1870963, at *6 (Cal. Ct. App. Apr. 14, 2003).
[93] *Comer v. Micor, Inc.,* 436 F.3d 1098, 1104 n.11 (9th Cir. 2006).
[94] *Goldman,* 92 Cal. Rptr. 3d at 540 (emphasis added).
[95] *Id.* at 550 (emphasis added).
[96] *See Id.* at 542-43 (stating that equitable estoppel "precludes a party from asserting rights he otherwise would have had against another when his own conduct renders assertion of those rights contrary to equity" (internal quotations omitted)).

22

Courts have found the intertwined-claims test met where plaintiffs have attempted to hold nonsignatories liable pursuant to duties or obligations imposed by the agreements containing the arbitration clause.[97] Conversely, in denying motions to compel arbitration, courts have made clear that equitable estoppel applies only in rare circumstances where a signatory is bringing suit arising out of duties directly imposed by the underlying agreement containing the arbitration clause.[98]

As noted above, Plaintiff's claims against Defendants stem a technical failure. This led to Defendants' failure to provide services to customers. Plaintiff asserts a (i) breach of contract claim against Defendants – breach of their own contract not Sprint's; (ii) breach of implied covenant of good faith and fair dealing; (iii) money had a received; (iv) negligence; and (v) violation of Bus. & Prof. Code § 17200 *et. seq.* In asserting these claims, Plaintiff has not alleged a duty on the part of Defendants imposed under Plaintiff's agreement with Sprint, nor has he alleged any reliance on the Sprint Agreement. Defendants' obligations and duties arise solely from their own relationships with Plaintiff. Plaintiff's action arises solely from Defendants' misconduct, and asserts causes of action based on obligations and duties Defendants had under their agreement with Plaintiff.

In short, not one of Plaintiff's causes of action against Defendants arises out of any duty imposed on Defendants by the Sprint Agreement. As such, the Court should deny Defendants' motion as it relates to equitable estoppel. Defendants' have their own agreement with Plaintiff and equity would not permit Defendants to simply piggyback onto Sprint's agreement with Plaintiff in order to compel arbitration.

/ / /

/ / /

/ / /

---

[97] *Amisil Holdings Ltd. v. Clarium Capital Mgmt.,* 622 F. Supp. 2d 825, 840-41 (N.D. Cal. 2007) (applying estoppel where plaintiff attempted to use the written agreement containing the arbitration clause as a basis for his action against nonsignatory defendants.).
[98] *Goldman,* 92 Cal. Rptr. 3d at 540-41 (finding that signatories' claims against nonsignatories were unrelated to any obligations in the operating agreements containing the arbitration clause).

23

**A.  Defendants' Motion to Dismiss Should be Denied In Its Entirety.[99]**

**1.  Applicable Standard**

A motion to dismiss for failure to state a claim "tests the legal sufficiency of a claim."[100] Allegations of fact must be taken as true and construed in the light most favorable to the nonmoving party.[101] Although wholly conclusory statements will not survive a motion to dismiss, "a complaint attacked by a motion to dismiss does not need detailed factual allegations."[102] Rather, a complaint must simply state "enough facts to state a claim to relief that is plausible on its face."[103] "Dismissal is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory."[104] Leave to amend should be granted unless it is clear that the deficiencies cannot be cured.[105]

**2.  The "Uninterrupted Service" Disclaimers in the Blackberry Solution License Agreement and Blackberry Internet Service End User Agreement Do Not Foreclose Plaintiff's Claims**

Defendants assert that Counts I, II, III and IV are barred by the BBSLA and the BIS End User Agreement (collectively "Agreements"), both of which contain a disclaimer relating to "uninterrupted service."  Defendants' argue that the agreements explicitly disclaim liability for interruptions in service, and therefore, Plaintiff is effectively without a remedy for the three-day cessation of service. Even assuming *arguendo* Plaintiff's acceptance of the Agreements, as well as their enforceability, other provisions of the Agreements explicitly contemplate the remedy that Plaintiff seeks, and do not compel dismissal of Counts I, II, III and IV.

---

[99]  Plaintiff believes the Motion to Dismiss to be untimely. Defendants have simultaneously filed procedural and substantive based motions. Plaintiff believes that this Court should handle all procedural matters before addressing the substantive matters at hand. Additionally, considering the current state of law regarding arbitrations provisions and their enforceability in California, Plaintiff is prejudiced in having to address the enforceability of Defendants' arbitration provision as well as their substantive motion to dismiss within the allowable page limits set by the local rules of this Court.
[100] *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).
[101] *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).
[102] *Id.*
[103] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).
[104] *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).
[105] *Lucas v. Dep't of Corrs.*, 66 F.3d 245, 248 (9th Cir. 1995).

Defendants' assertion that the Agreements "expressly and unambiguously" disclaim liability for any service interruption[106] is unavailing. Although the specific disclaimers invoked by Defendants state, in pertinent part, that RIM does not warrant "uninterrupted use or operation" of any Blackberry service[107], significantly, the term "uninterrupted" is not defined in the Agreements.  As explained below, additional provisions within make clear that the "uninterrupted" service disclaimers on which Defendants rely cannot absolve them of liability for every conceivable service "interruption" - especially when, as here, a service interruption amounts to a complete and prolonged cessation of service all while class members were being charged for service not received.  If a remedy was not warranted here, RIM's CEO, Mike Lazaridis, would not have offered one (albeit an insufficient non-cash remedy), conceding the company's failure: "Since launching BlackBerry in 1999, it's been my goal to provide reliable real-time communications around the world," *We did not deliver on that goal this week--not even close. I apologize for the service outages this week. We've let many of you down."* FAC ¶4 (emphasis added).

"A written contract must be read as a whole and every part interpreted with reference to the whole, with preference given to reasonable interpretations."[108] In this case, the limitation on liability provisions in the Agreements provide critical context for the "uninterrupted" service disclaimers invoked by Defendants and narrow the scope of those disclaimers so that they are commercially reasonable.

The Agreements both contain limitation on liability provisions that contemplate direct damages for "failures," "delays," and "non-performance" of Blackberry services. Those provisions provide as follows:

> To the maximum extent permitted by applicable law, notwithstanding anything else in this Agreement, to the extent RIM is liable to You, RIM shall only be liable for damages incurred during the period of such failure, delay or non-performance of Your Blackberry Solution.[109]

---

[106] Doc. 13 at 12.
[107] See BockingAff. Ex. A-6 ¶ 19(b)(ii); Ex. A-5 ¶ 9
[108] *Wapato Heritage, L.L.C. v. United States*, 637 F.3d 1033, 1039 (9th Cir. 2011)(citing *Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206, 1210 (9th Cir.1999)).
[109] BBSLA (Ex. A-6 ¶ 20(c)).

The only type of damages that you may recover against RIM Party in relation to the provision, use, performance or non-performance of the BIS or any portion thereof, regardless of the form of action, whether in contract, tort (including negligence), strict liability or otherwise, shall be your direct damages, if any, and the aggregate liability for the RIM Parties shall not in any event exceed the amount paid by you or on your behalf to RIM for the BIS for the period such failure, delay or nonperformance occurs.[110]

Considered together, the "uninterrupted" service disclaimers and the "limitation on liability" provisions suggest that the Agreements distinguish between mere "interruptions" in service and the utter "failure" or "nonperformance" of service. For the latter, the Agreements expressly contemplate damages for the period of such failure or non-performance.

Plaintiff contends that the three-day service outage at issue qualifies as a total "failure" or "nonperformance" of the service for which Plaintiff is entitled to be reimbursed, as opposed to a mere "interruption" in service. It is well-established that ambiguities in a contract must be construed against a drafter.[111]

Common sense dictates that a protracted "interruption" must become a "failure" or "non-performance" under the Agreements at issue; otherwise, subscribers could be without a remedy for a year-long suspension in service and the limitation on liability provisions cited above would be superfluous – and courts should attempt to construe contracts to avoid absurdity, and must reject interpretations which would make the contract unusual, extraordinary, harsh, unjust, or inequitable.[112]

Accordingly, Defendants' motion to dismiss Plaintiff's claims on the basis of the "uninterrupted service" disclaimers should be denied.

### 3. Plaintiff Has Sufficiently Pleaded a Cause of Action in Count I for Breach of Contract

Defendants seek dismissal of Count I, with prejudice, on the basis of the Agreements; however, the Agreements bolster, rather than undermine, Plaintiff's breach

---

[110] BIS End User Agreement (Ex. A-5 ¶ 10).
[111] *Fed. Nat'l Mortgage Assn. v. Bugna,* 57 Cal. App. 4th 529, 535 (1997)(citing *Cathay Bank v. Lee,* 14 Cal.App.4th 1533, 1541(1993)("When ambiguities exist they are construed against the drafter of the instrument.").
[112] *Blecher & Collins, P.C. v. Nw. Airlines, Inc.,* 858 F. Supp. 1442, 1459 (C.D. Cal. 1994); *See* Cal.Civ.Code §§ 1638, 1643; *Straus v. North Hollywood Hosp., Inc.,* 150 Cal.App.2d 306, 311, 309 P.2d 541 (1957).

1  of contract claim.  Although Defendants fairly characterize Count I as a claim for breach

2  of implied contract – indeed, Plaintiff did not have access to the Agreements until

3  Defendants filed their motion to dismiss – Count I is entirely consistent with the express

4  agreements discussed herein.   Plaintiff's breach of contract claim merely seeks the

5  remedy contemplated by the Agreements: reimbursement for the amounts paid to

6  Defendants on Plaintiff's behalf for the 3-day period of "failure" or "non-performance"

7  of service.[113]

8       Rather than dismissing Count I with prejudice, Plaintiff respectfully requests that

9  the court grant leave to amend Count I to reflect the specific terms of the Agreements.

10  Defendants' motion to dismiss Count I with prejudice should be denied.

11       **4.      Plaintiff Has Stated A Cause of Action In Count II for Breach of Implied Covenant of Good Faith and Fair Dealing.**

12

13       Defendants make three limited arguments against Plaintiff's claim for breach of

14  the implied covenant of good faith and fair dealing: (i) it is duplicative of the breach of

15  contract claim;(ii) it contradicts the express terms of the Agreements; and (iii) Plaintiff

16  failed to allege that Defendants acted in bad faith.

17       As to the argument regarding duplication of claims, "[t]here is an implied

18  covenant of good faith and fair dealing in every contract…"[114]   "[T]he covenant is

19  implied as a supplement to the express contractual covenants, to prevent a contracting

20  party from engaging in conduct which frustrates the other party's rights to the benefits of

21  the contract."  Moreover, despite Defendants' protest, Plaintiff's allegations go beyond a

22  mere contract breach. Plaintiff's breach of contract claim is predicated on Defendant's

23  failure to provide services for 3-days. Plaintiff's implied covenant claim goes further and

24  includes Defendants' bad faith offer of free applications as "compensation" for the outage

25  when cash is the chosen medium of exchange.

26

27  ----

[113]FAC ¶¶ 1-6, 27-35; Plaintiff's complaint uses the terms "outage" to describe this period of "non-performance" or

28  "failure." (Compl. ¶¶ 1, 2, 4-6, 29, 30, 32-35.)
[114] *Comunale v. Traders & Gen. Ins. Co.*, 50 Cal. 2d 654, 658, 328 P.2d 198, 200 (1958).

Defendants' second argument with regards to reconciling the express terms of the contract with Plaintiff's implied covenant claim should also fail since mere "adherence to the terms of a contract does not insulate a party against a claim of breach of the implied covenant of good faith and fair dealing."[115] Further, as Plaintiff's argued above, Defendants' failure to provide services for 3-days is not covered by the "uninterrupted service" disclaimer, and therefore, Defendants' conduct does not adhere to the Agreements. Here, Plaintiff is not seeking to create an obligation not contemplated by the contract.

Lastly, Plaintiff sufficiently alleges Defendants' "conscious and deliberate act" that unfairly frustrates the reasonable expectations of the other party to the contract. Plaintiff plainly alleges that Defendants' acted unfairly and without good faith and fair dealing and in an immoral, unethical, oppressive and unscrupulous manner.[116] As such, Plaintiff sufficiently pleaded facts establishing that Plaintiff and other consumers had a reasonable expectation to receive cash compensation for Defendants' failure to provide services as contemplated in their service agreement. By offering "free applications" in place of money had and received by Defendants, Defendants breached the implied covenant of good faith and fair dealing that is part of every contract.[117] The Court should therefore reject Defendants' arguments here.

5.      **Plaintiff Has Stated A Cause of Action in Count III for Money Had and Received.**

An action for money had and received lies when a plaintiff pleads that (1) a defendant posses money which (2) inequity and in good conscience he or she ought to pay over to plaintiff.[118] Plaintiff adequately pled these elements in the FAC.[119] Plaintiff asserts a claim for money had and received based on Defendants' retention of fees for 3-days of service that was not provided. Defendants argue that Plaintiff's claim for money

---

[115] *Amparan v. Plaza Home Mortg.*, 2008 U.S. Dist. LEXIS 109148, at *43 (N.D. Cal. Dec. 17, 2008).
[116] *See* FAC ¶¶ 59-60, 65, 92-93.
[117] *See* FAC ¶¶ 58-66.
[118] *Mains v City Title Ins. Co.*, 34 Cal. 2d 580 (1949)
[119] *See* FAC ¶¶ 67-75.

had and received must fail. Defendants contend that since the claim for money had and received is based on the same facts as Plaintiff's breach of contract claim, it must fail because Plaintiff's breach of contract claim must fail. Defendants begin by assuming the correctness of their position in all regards and then reason backward based on that assumption.

Plaintiff's cause of action has been properly pled and Count III of Plaintiff's first amended complaint, is pled in the alternative to Count I -- and will continue to be pled in the alternative, should the Court grant leave to amend Count I to reference the Agreements -- and should therefore not be dismissed.[120]

### 6. **Plaintiff Has Stated A Cause of Action in Count IV for Negligence.**

Plaintiff's claim for negligence is based on Defendants' failure to "maintain reasonable care of their systems" and the resulting injury to Plaintiff.[121] Defendants maintain that Count IV fails to state a claim for negligence because RIM has no duty under California law or the Agreements to provide continuous, uninterrupted service. Defendants' argument is deficient in several respects.

To allege a cause of action for negligence, the plaintiff must allege a duty, a breach of that duty, and injury to the plaintiff as a proximate result of that breach.[122] Whether a duty exists is a question of law for the court to decide.[123] A number of factors form this inquiry: (1) the reasonable foreseeability of the injury; (2) the likelihood of the injury; (3) the closeness of the connection between the defendant's conduct and the injury suffered; (4) the moral blame attached to the defendant's conduct; (5) policy of preventing future harm; (6) the consequences of placing the burden on the defendant; and (7) the availability, cost, and prevalence of insurance for the risk involved.[124]   Plaintiff's allegations are more than adequate to establish a duty in the instant matter.

---

[120] In the event Plaintiff is granted leave to amend, he will ensure that Count III does not incorporate by reference the terms of the Agreements.
[121] FAC. ¶ 85.
[122] *Krawitz v. Rusch*, 209 Cal. App. 3d 957, 963 (Ct. App. 1989).
[123] *Id.*
[124] *Tucker v. CBS Radio Stations, Inc.*, 194 Cal. App. 4th 1246, 1252, 124 Cal. Rptr. 3d 245 (2011).

29

It is highly foreseeable that Plaintiff would be injured from a prolonged cessation of service.  Defendants' Annual Report, cited in the FAC, makes clear Defendants knew customers rely on it for uninterrupted and consistent service to meet their needs:

**BlackBerry Service**
RIM's global BlackBerry Infrastructure remains a core advantage for our business and is an integral part of RIM's ability to deliver industry leading push services, security, manageability and spectral efficiency for RIM's customers and partners.

Research in Motion Annual Report 2011 at p 4.  Personal and Business subscribers would not be able to maintain the critical communications for which they pay monthly. Such a failure on the part of Defendant is highly likely to injure consumers, and Defendants conduct would be directly connected to that injury. The burden of guarding against the injury also weighs in favor of finding a duty in this case.  Defendants are in the business of data transmission and have extensive infrastructure to support that business; ensuring against a 3-day outage should not be unduly burdensome.  In this regard ¶4 of the FAC notes, Defendants' CEO concedes Defendants were aware of their need to provide "reliable real-time communications" to their customers but "we've let many of you down."  Finally, the consequences of placing this burden on Defendants are negligible.

Separate and apart from the factors discussed above, Defendants also acknowledge that "California law also allows for a duty in negligence to arise from a contractual obligation."[125]  Invoking the service interruption disclaimers in the Agreements, however, Defendants assert that the contract forecloses any claim of liability rooted in negligence.[126] As noted above, Defendants' position minimizes the service disruption in this case.  A 3-day failure of service is no ordinary service interruption and cannot be covered by the service interruption liability disclaimer, given the limitation on liability provisions discussed herein.

---

[125]Doc. 13 at 17 (citing *Ratcliff Architects v. Vanir Constr. Mgmt., Inc.*, 88 Cal. App. 4th 595, 604, 106 Cal. Rptr. 1 (2001).
[126]*Id.* at 18.

MEMORANDUM IN OPPOSITION TO MOTION TO COMPEL ARBITRATION OR IN THE ALTERNATIVE TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

To be clear, Plaintiff is not asserting that Defendants had a duty to provide "perfect" service. Rather, Plaintiff is asserting that Defendants had a duty to prevent a multiple-day outage during which service was completely unavailable. If the Agreements are indeed enforceable, those agreements must, at a minimum, obligate Defendants to provide functioning service in exchange for payment of fees by customers. The remedy for the failure to do so is a refund, not "apps".

### 7. Plaintiff Has Stated A Cause of Action in Count V for a Violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et. seq.* ("UCL")

Plaintiff alleges that Defendants' failure to provide consumers with a cash refund after their failures caused a 3-day service outage constitutes an unlawful business practice under California's Unfair Competition Law – the UCL.[127] Plaintiff further alleges that Defendants' offer to provide a refund in the form of free apps for a limited time period, rather than restitution for money paid constitutes an unfair business practice under the UCL. Defendants argue that Plaintiff's causes of action under the UCL cannot stand because: (i) they rely on an implied contract, which cannot be found when an actual contract exists; (ii) a unlawful §17200 claim cannot be predicated on a simple breach of contract; (iii) Plaintiff failed to plead reliance; and (iv) the decision to offer free applications does not constitute an "unfair" business practice.

Plaintiff's §17200 claims rely on a breach of contract – not merely a breach of an implied contract. Additionally, contrary to Defendants' arguments, Plaintiff need not plead that he relied upon Defendants' misrepresentations in purchasing a Blackberry Smartphone. Defendants attempt to categorize Plaintiff's claims as being based upon a misrepresentation, which is not true. Reading Plaintiff's first amended complaint, specifically Count V, it is clear that Plaintiff does not allege any misrepresentation. Prop 64 amended §17204, and requires that a UCL representative claim be brought by a person "who has suffered injury in fact and has lost money or property as a result of such

---

[127] FAC ¶ 88-95

MEMORANDUM IN OPPOSITION TO MOTION TO COMPEL ARBITRATION OR IN THE ALTERNATIVE TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

1   unfair competition."[128] In the instant matter, Plaintiff pleaded both injury in fact and loss

2   of money.

3          A breach of contract may form the predicate for a §17200 claim, provided it also

4   constitutes conduct that is unlawful, unfair, or fraudulent.[129] A systematic breach of a

5   standard-form contract has been deemed an "unfair" trade practice, despite there being no

6   showing of bad faith.[130] California courts have held that a UCL "unlawful" prong claim

7   may be predicated on violation of a common-law rule, specifically, breach of the implied

8   covenant of good faith and fair dealing.[131]

9          Plaintiff's "unlawful" §17200 claim is predicated on Defendants' breach of

10  contract, which also constitutes an "unfair" business practice and a breach of the implied

11  covenant of good faith and fair dealing. In his Amended Complaint, Plaintiff pleaded that

12  "by failing to provide service on the dates in which the outage occurred, Defendants

13  systematically breached their contracts with Plaintiff and the Subclass. By failing to

14  provide cash refunds and compensation for the period in which service was not provided,

15  Defendants systematically breached their contracts with Plaintiff and the Subclass."[132] As

16  Plaintiff clearly pleaded, Defendants breached their contract with Plaintiff and the

17  Subclass by failing to provide services. This is the breach that forms the predicate of

18  Plaintiff's §17200 claim; however, Defendants breach is made "unlawful" under §17200

19  because Defendants unfairly refused to provide Plaintiff and the Subclass with a cash

20  refund as compensation for the period of time they didn't have their services. Therefore,

21  Plaintiff properly pleaded a claim for unfair competition under the unlawful prong of

22  §17200.

---

23  [128] Bus. & Prof. Code §17204 as amended by Prop. 64, §3.
    [129] *Puentes v. Wells Fargo Home Mortg., Inc.*, 160 Cal. App. 4th 638, 645 (2008); *See also Arce v. Kaiser Found. Health
24  Plan, Inc.*, 181 Cal. App. 4th 471, 489 (2010)(citing *Puentes*, and agreeing that breach of contract may form predicate for
    UCL claim "provided it also constitutes conduct that is 'unlawful, or unfair, or fraudulent'").
    [130] *See Orkin Exterminating Co., Inc. v. FTC*, 849 F.2d 1354 (11th Cir. 1988).
25  [131] *Gabana Gulf Distribution, Ltd. v. GAP Intern. Sales, Inc.*, 2008 WL 111223 (N.D. Cal. Jan. 9, 2008)("Because the
    Court has denied summary judgment to Gap on the breach of covenant claim, summary judgment must also be DENIED
26  as to the § 17200 claim because Gabana may use the covenant claim as a predicate for § 17200 liability. Although the state
    of § 17200 jurisprudence is in rapid flux, California courts have not yet foreclosed common law theories–such as breach
27  of the covenant of good faith–as a basis for actions pursuant to § 17200."); *See Mercado v. Allstate Ins. Co.*, 340 F.3d 824,
    828 n. 3 (9th Cir.2003); *Diaz v. Allstate Ins. Group*, 185 F.R.D. 581, 595 (C.D.Cal.1998) ("[A]llegations of fraudulent and
    unfair business activity are sufficient to state a cause of action for relief under the UCA.").
28  [132] FAC ¶ 91.

MEMORANDUM IN OPPOSITION TO MOTION TO COMPEL ARBITRATION OR IN THE
ALTERNATIVE TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

1    For these reasons, the Court should deny Defendants motion to dismiss Count V.

2                              IV.    CONCLUSION

3        For the foregoing reasons, Plaintiff requests that the Court deny Defendants'

4    motion to dismiss and deny Defendants' motion to compel arbitration due the

5    unconscionable nature of the arbitration agreement.

6                                   Respectfully submitted,

7                                   RIDOUT & LYON, LLP

8    Dated:  April 30, 2012      By:   /s/ Caleb Marker
                                       Christopher P. Ridout
9                                      Caleb LH Marker
                                       555 E. Ocean Blvd., Suite 500
10                                     Long Beach, California  90802
                                       (562) 216-7380 Telephone
11                                     (562) 216-7385 Facsimile

12                                     J. Gordon Rudd Jr.
                                       ZIMMERMAN REED, PLLP
13                                     1100 IDS Center
                                       80 South Eighth Street
14                                     Minneapolis, MN  55402
                                       (612) 341-0400
15                                     (612) 341-0844 Facsimile
                                       (*Pending Admission Pro Hac Vice*)
16

17                                     **Attorneys for Plaintiff**

18

19

20

21

22

23

24

25

26

27

28

MEMORANDUM IN OPPOSITION TO MOTION TO COMPEL ARBITRATION OR IN THE
ALTERNATIVE TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT