Name: Christopher P. Ridout, Esq. (SBN 143931)
Address: 555 E. Ocean Blvd., Suite 500
City, State, Zip: Long Beach, California 90802
Phone: (562) 216-7380
Fax: (562) 216-7385
E-Mail: c.ridout@ridoutlyonlaw.com

☐ FPD   ☐ Appointed   ☐ CJA   ☐ Pro Per   ☒ Retained

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIC MITCHELL, individually and on behalf of all others similarly situated,<br><br>PLAINTIFF(S),<br>v.<br>RESEARCH IN MOTION, LTD., a Canadian corporation; ET AL.<br><br>DEFENDANT(S). | CASE NUMBER:<br><br>CV11-8872-MWF-VBK<br><br>NOTICE OF APPEAL |

NOTICE IS HEREBY GIVEN that _____PLAINTIFF ERIC MITCHELL_____ hereby appeals to
*Name of Appellant*
the United States Court of Appeals for the Ninth Circuit from:

**Criminal Matter**

☐ Conviction only [F.R.Cr.P. 32(j)(1)(A)]
☐ Conviction and Sentence
☐ Sentence Only (18 U.S.C. 3742)
☐ Pursuant to F.R.Cr.P. 32(j)(2)
☐ Interlocutory Appeals
☐ Sentence imposed:

☐ Bail status:

**Civil Matter**

☒ Order (specify):
   12/4/12 Order Granting Defendant's Motion
   Compel Arbitration (Document 39)
☐ Judgment (specify):


☐ Other (specify):

Imposed or Filed on __December 4, 2012__. Entered on the docket in this action on __December 4, 2012__.

A copy of said judgment or order is attached hereto.

| | |
|---|---|
| January 3, 2013 | /s/ Christopher P. Ridout, Esq. |
| Date | Signature |
| | ☐ Appellant/ProSe   ☒ Counsel for Appellant   ☐ Deputy Clerk |

Note:   The Notice of Appeal shall contain the names of all parties to the judgment or order and the names and addresses of the attorneys for each party. Also, if not electronically filed in a criminal case, the Clerk shall be furnished a sufficient number of copies of the Notice of Appeal to permit prompt compliance with the service requirements of FRAP 3(d).

JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIC MITCHELL<br><br>Plaintiff,<br><br>vs.<br><br>RESEARCH IN MOTION, LTD.<br><br>Defendant. | Case No. CV 11-8872-MWF (VBKx)<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION** [13]<br><br>Judge: Hon. Michael W. Fitzgerald |

This matter is before the Court on Defendant's Motion to Compel Arbitration ("Motion to Compel"). (Docket No. 13). For the reasons set forth in this Order, the Court **GRANTS** the Motion to Compel.

## I. MOTION TO COMPEL

Defendant RIM moves to compel arbitration in the instant Motion. Plaintiff Mitchell argues in his Opposition that the contract is procedurally and substantively unconscionable, and therefore cannot be enforced. He asserts that the Supreme Court precedent of *AT&T Mobility LLC v. Concepcion*, __ U.S. __, 131 S. Ct. 1740, 179 L. Ed. 2d 742 (2011) is therefore not controlling. (Opp'n at 1). The Court finds that there is moderate procedural unconscionability and sufficient substantive unconscionability for the arbitration agreement to be

1

deemed unconscionable under California law post-*Concepcion*. The Court further is not persuaded that that equitable estoppel applies here, based on the case law presented.

Following a hearing on May 24, 2012, the Court ordered supplemental briefing on the Court's authority to sever the unconscionable portions of the operative agreement. (Docket No. 26). The Court has read and considered the supplemental briefing, and finds that the unconscionable provisions of the applicable contract can be severed such that the contract survives. The Court therefore grants RIM's Motion to Compel Arbitration.

## II. UNCONSCIONABILITY

### A. PROCEDURAL UNCONSCIONABILITY

Procedural unconscionability focuses on (1) oppression and (2) surprise rooted in unequal bargaining power of the parties. *Concepcion*, 131 S. Ct. at 1746 ("A finding of unconscionability requires a procedural and a substantive element, the former focusing on oppression or surprise due to unequal bargaining power, the latter on overly harsh or one-sided results.") (quotations and citations omitted). The procedural analysis takes into account the parties' relative bargaining strength and the extent to which a provision is hidden or unexplained.

Mitchell argues that the arbitration agreement is procedurally unconscionable as a result of (1) unequal bargaining power of the parties, (2) the standardized nature of the arbitration provision, and (3) the characterization of the broader contract as a non-negotiable contract of adhesion. (Opp'n at 6-7). Mitchell argues that the arbitration agreement satisfies the oppression prong because it was a standard, take-it-or-leave it offer that he could not negotiate, characterizing it as a contract of adhesion. He cites *Circuit City Stores, Inc. v. Adams*, 279 F.3d 889 (9th Cir. 2002), a pre-*Concepcion* decision for this point, arguing that the take-it-or-leave-it nature of the arbitration agreement and the confusing character of its presentation render it procedurally unconscionable.

(Opp'n at 8). Indeed, virtually all of Mitchell's cases are pre-*Concepcion*. The Court must view the holdings of those cases in light of the Supreme Court's clear holding on FAA preemption in *Concepcion*.

RIM argues on the other hand that the agreement is procedurally conscionable because (1) Mitchell had an opportunity to review and reject the terms, (2) Mitchell had market alternatives to entering into the agreement, *i.e.* he had a meaningful choice not to enter into the agreement, and (3) there was no surprise since the arbitration terms were clearly labeled in font and format consistent with other provisions of the Blackberry Solution License Agreement ("Service Agreement"). (Reply at 4-6). RIM also argues that *Concepcion* rejected the old standard governing unconscionability assessments of arbitration provisions under California law. (*Id.* at 1, 3).

Before *Concepcion,* it was fairly well-established that some minimal level of procedural unconscionability existed where contracts were drafted by the party with greater bargaining power and were presented in a take-it-or-leave-it fashion —in other words contracts of adhesion were procedurally unconscionable at some level. *Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1004 (9th Cir. 2010) ("California law treats contracts of adhesion, or at least terms over which a party of lesser bargaining power had no opportunity to negotiate, as procedurally unconscionable to at least some degree."); *but see Monex Deposit Co. v. Gillam*, 671 F. Supp. 2d 1137, 1143 (C.D. Cal. 2009) ("However, the Court agrees with both Monex and the *Parada* court that a contract of adhesion is not necessarily unconscionable. Rather, the Court must consider whether there was surprise or oppression.").

*Concepcion* stands for the proposition that the Federal Arbitration Act ("FAA") preempts traditional grounds in law or equity for the revocation of a contract when they are "applied in a fashion that disfavors arbitration." *Concepcion*, 131 S. Ct. at 1747 (stating that the doctrine of unconscionability so

applied may be preempted by the FAA). The opinion seems to question California's routine invalidation as unconscionable of contracts of adhesion generally and arbitration agreements specifically. *Id.* at 1750 ("[T]he times in which consumer contracts were anything other than adhesive are long past."). The Court also noted that "[o]f course States remain free to take steps addressing the concerns that attend contracts of adhesion – for example, requiring class-action-waiver provisions in adhesive arbitration agreements to be highlighted. Such steps cannot, however, conflict with the FAA or frustrate its purpose to ensure that private arbitration agreements are enforced according to their terms." *Id.* 1750, n. 6.

*Concepcion* does not bar Mitchell's ability to argue that, as applied to him, the arbitration agreement is unconscionable. *See, e.g., Kanbar v. O'Melveny & Myers,* 2011 WL 2940690, at *7 (N.D. Cal. 2011) (holding that adhesive arbitration agreements are subject to unconscionability analysis even after *Concepcion*). *Concepcion* only goes so far as holding that arbitration agreements cannot be invalidated as unconscionable **because** they require arbitration. Arbitration agreements can be invalidated where unconscionability exists, but not if the factors supporting a finding of unconscionability are merely the factors that constitute an arbitration agreement. *Concepcion,* 131 S. Ct. at 1747 ("[A] court may not rely on the uniqueness of an agreement to arbitrate as a basis for a state-law holding that enforcement would be unconscionable, for this would enable the court to effect what . . . the state legislature cannot.") (quotations and citations omitted, ellipsis in original). Other features of California case law on unconscionability appear to remain operative so long as they are not applied in a way that "conflict[s] with the FAA or frustrate[s] its purpose." *Concepcion,* 131 S. Ct. at 1750, n. 6.

Under California law, the Service Agreement (encompassing the arbitration agreement it contains) is a contract of adhesion because it was a standard contract drafted by the more powerful party with no opportunity for Mitchell, the customer, to negotiate. *See, e.g., Gatton v. T-Mobile USC, Inc.*, 152 Cal. App. 4th 571, 582, 61 Cal. Rptr. 3d 344 (2007) ("It is clear that the T–Mobile service agreement was a contract of adhesion: T–Mobile drafted the form agreement, its bargaining strength was far greater than that of individual customers, and customers were required to accept all terms and conditions of the agreement as presented or forgo T–Mobile's telephone service.").

There is tension between the California view and the statement in *Concepcion* that consumer contracts are adhesive. The Court resolves this tension by concluding that many contracts of adhesion are minimally procedurally unconscionable, but not necessarily (or even typically) substantively unconscionable in a manner that survives *Concepcion*. *See, e.g., Lau v. Mercedes-Benz USA LLC*, 2012 WL 370557, at *8 (N.D. Cal. Jan. 31, 2012) (explaining that in spite of *Concepcion*'s observation that nearly all consumer contracts are adhesive, California law treats these contracts as minimally procedurally unconscionable). As noted above, the Supreme Court specifically referred to California's continuing ability to restrict contracts of adhesion. *Concepcion*, 131 S. Ct. at 1750, n. 6 (discussing the ways in which California could, without running afoul of FAA preemption, require certain elements of contracts of adhesion).

The Service Agreement, and the arbitration agreement it contains, are moderately procedurally unconscionable. The factor of market alternatives appears mixed or to favor RIM. In the context of goods and services, the existence of market alternatives can mitigate a plaintiff's claim of procedural oppression. *See, e.g., Belton v. Comcast Cable Holdings, LLC*, 151 Cal. App. 4th 1224, 1245, 60 Cal. Rptr. 3d 631 (2007) ("The availability of alternative sources

Case 2:11-cv-08872-MWF-VBK   Document 39   Filed 12/04/12   Page 6 of 16   Page ID #:815

from which to obtain the desired service defeats any claim of oppression, because the consumer has a meaningful choice."). But other courts have since concluded that even where market alternatives exist, contracts of adhesion still result in minimal procedural unconscionability. *See, e.g., Steiner v. Apple Computer, Inc.*, 2008 WL 691720, at *9 (N.D. Cal. 2008) (holding that there was no market alternative to a newly-released Apple iPhone due to its unique combination of phone, iPod, and camera services and the fact that plaintiff purchased it within hours of its initial release).

Likewise, Mitchell's argument for surprise is weak because the arbitration term appeared in the contract with the same typeface as other provisions and was segregated under the separate subheading "Governing Law and Dispute Resolution". (Reply at 6; Ex. 6 to Bocking Decl. at 73; *see, e.g., Gatton v. T-Mobile USC, Inc.*, 152 Cal. App. 4th at 581 ("Surprise is defined as 'the extent to which the supposedly agreed-upon terms of the bargain are hidden in the prolix printed form drafted by the party seeking to enforce the disputed terms.'") (citations omitted); *Monex*, 671 F. Supp. 2d at 1143 ("The *Parada* court found that the Monex arbitration provisions were not hidden, but were in the same typeface and font as the rest of the agreement and had bold headings accurately describing the substance of each paragraph. *Id.* The Court finds the *Parada* description to be accurate with respect to the agreement in this case and rejects Richard Gilliam's argument that the arbitration provisions are overly complicated.")).

However, procedural unconscionability is heightened by the fact that RIM did not include in the Service Agreement a copy of the AAA's rules to which consumers would be bound in arbitration. *See, e.g., Samaniego v. Empire Today LLC*, __Cal. Rptr. 3d __, 2012 WL 1591847, at *4 (Cal. App. 1st Dist. April 5, 2012) (finding heightened procedural unconscionability where "Empire failed to

provide plaintiffs with a copy of the relevant arbitration rules" and noting the significance of the omission.).

Therefore, the Court is prepared to find a moderate level of procedural unconscionability, which would require a moderate-to-strong showing of substantive unconscionability in order to render the arbitration agreement unenforceable. *See, e.g., Gatton*, 152 Cal. App. 4th at 584 ("If the challenged provision does not have a high degree of substantive unconscionability, it should be enforced.").

### B. SUBSTANTIVE UNCONSCIONABILITY

Substantive unconscionability analysis focuses on the existence of a harsh or one-sided result and an absence of justification for that result. *Armendariz v. Foundation Health Psychcare Services, Inc.*, 24 Cal. 4th 83, 117-118, 99 Cal. Rptr. 2d 745 (2000) ("As has been recognized 'unconscionability turns not only on a 'one-sided' result, but also on an absence of 'justification' for it.'" (quoting *A&M Produce Co. v. FMC Corp.*, 135 Cal. App. 3d 473, 487, 186 Cal. Rptr. 114 (1982)).

Mitchell argues that the arbitration agreement is substantively unconscionable because it (1) lacks mutuality, (2) claims to limit damages, (3) provides for arbitration in New York under AAA rules with the parties splitting arbitration costs, and (4) specifies New York as the venue for court-filed actions by RIM. (Opp'n at 9). RIM argues in response that the arbitration provision is not substantively unconscionable because (1) *Concepcion* rejected the argument that the high cost of an individual, low-value arbitration discourages enforcement of rights such that the operative agreement is unconscionable, and (2) provisions of the agreement display mutuality. (Reply at 9-10).

California law requires a "modicum of bilaterality" for binding arbitration provisions to be considered conscionable. *See, e.g., Pokorny v. Quixtar, Inc.*, 601 F. 3d 987, 1000 (9th Cir. 2010). "Thus, mutuality is the 'paramount'

consideration when assessing substantive unconscionability." *Id.* at 997. The arbitration agreement is arguably not bilateral or mutual because it requires Mitchell, but not RIM to arbitrate all of his claims. (Ex. 6 to Bocking Decl. at 73-74). RIM may bring claims for debt collection, and breach of eight different sections of the Service Agreement in the courts of New York State without being subject to binding arbitration. (*Id.*). "Requiring one party to arbitrate its claims but not the other is a paradigmatic form of substantive unconscionability under California law." *Pokorny*, 601 F.3d at 1001; *but see Gray v. Conseco, Inc.*, 2000 WL 1480273, at *4 (C.D. Cal. Sept. 29, 2000) ("[S]everal courts have held that the lack of mutuality arising from the fact that Defendants may go to court while Plaintiffs must arbitrate does not render the clause unconscionable. . . . In contrast, the California Supreme Court has held that a one-sided arbitration clause is unconscionable unless there is a valid business justification for the one-sidedness of the clause.").

Certain factors weigh against a finding of substantive unconscionability, like mutual assent to the choice of arbiter and a 50/50 split of arbitration costs. (Ex. 6 to Bocking Decl. at 73-74). But the contract also limits RIM's liability to the greater of either the price of the product or five dollars. (Ex. 6 to Bocking Decl. at 69). RIM relies on one case outside of either the adhesion or arbitration context to argue that contractual limitations of liability are well-established under California law. (Reply at 10). Cases generally cite *Markborough* for the proposition that limitations of liability in contracts are valid under California law. *Markborough California, Inc. v. Superior Court*, 227 Cal. App. 3d 705, 709-10, 277 Cal. Rptr. 919 (1991). The *Markborough* case, however, arose in a specific statutory context – certain construction contracts as set forth in the California Civil Code – that is inapplicable here. The plaintiff's arguments in that case were similar to arguments about adhesive contracts, but the contract at issue was not offered on a take-it-or-leave-it basis. *See id.*

Mitchell, on the other hand, argues that limiting just the consumer's recovery to the purchase price is substantively unconscionable because RIM's recovery is not so limited. (Opp'n at 12; Ex. 6 to Bocking Decl. at 69). RIM responds that this argument is an end-run around *Concepcion*. It appears that RIM oversimplifies Mitchell's argument. Mitchell does not argue only that the class limitation renders his participation in the high-cost arbitration unlikely (an argument undermined by *Concepcion*), he also argues that the product-price limitation on RIM's liability operates as a one-sided term that renders the adhesive agreement substantively unconscionable. This argument is sound in terms of pre-*Concepcion* law, and the Court does not read *Concepcion* as undercutting this argument. *See, e.g., Lhotka v. Geographic Expeditions, Inc.*, 181 Cal. App. 4th 816, 825, 104 Cal. Rptr. 3d 844 (2010) ("Notably, there is no reciprocal limitation on damages or indemnification obligations imposed on GeoEx.").

The contract here (1) limits a Mitchell's potential damages to the greater of the purchase price or five dollars, (2) requires Mitchell to arbitrate all of his claims while allowing RIM to bring suit in New York State courts on a variety of claims, (3) requires arbitration in New York under AAA rules by a mutually agreed-to or neutrally-appointed arbiter, and (4) provides that Mitchell and RIM split all arbitration costs. (Ex. 6 to Bocking Decl.). Arbitration in Mitchell's home forum appears possible, but only where state law prevents the venue selection contained in the Service Agreement. RIM argues it is an available alternative, but conceded at the hearing that it requires adjudication before being effective.

In *Concepcion*, the arbitration agreement did not appear to limit individual damages this drastically or disproportionally curtail the customer's avenues for redress. That contract bound both parties to arbitrate all claims except those litigable in small claims court, and required notice from the customer in order to

arbitrate his or her dispute. *Concepcion*, 131 S. Ct. at 1744 (describing the operative agreement). Under that agreement, the arbitration took place in the county where the customer was billed. *Id.* The court noted that for claims of $10,000 or less, certain procedures were available under the agreement, indicating that individuals could bring claims for recovery of more than $10,000. *Id.* "The agreement, moreover, denie[d] AT & T any ability to seek reimbursement of its attorney's fees, and, in the event that a customer receives an arbitration award greater than AT & T's last written settlement offer, require[d] AT & T to pay a $7,500 minimum recovery and twice the amount of the claimant's attorney's fees . . . ." *Id.* AT&T was also required to pay arbitration costs for all nonfrivolous claims. *Id.*

In *Monex*, which RIM relies on elsewhere to argue the arbitration term is enforceable, the arbitration agreement that was found to be substantively conscionable (1) required the parties to split the costs of a single arbiter, (2) required a three-arbiter panel for appeals, (3) limited recovery to actual contract *and* tort damages, prohibiting attorney's fees, and (4) allowed either party to seek injunctive or equitable relief. *Monex*, 671 F. Supp. 2d at 1148 ("In sum, the Court does not believe that a limitation on damages to actual contract and tort damages, in this context, shocks the conscience or is unfairly one-sided."). There is no indication that the provisions did not apply to each party, only an argument that one party was more likely to take advantage of certain terms. *Id.* at 1148 ("However, the Court is not convinced that in the context of an investment agreement one party is inherently more likely to seek injunctive relief than the other. Rather, the Court believes that the vast majority of disputes under this contract would be related to unpaid account balances or investment losses, and thus subject to arbitration. In any event, the availability of equitable and related relief is permissive, not restrictive, and simply preserves remedies a party would have in court."). As a whole, the conscionably adhesive arbitration terms are far

fairer to customers than the arbitration agreement contained in the Service Agreement.

The Court agrees with Mitchell's argument that the arbitration agreement demonstrates strong indicia of substantive unconscionability and agrees with Mitchell that a finding of unconscionability is consistent with *Coneff v. AT&T Corp.*, 673 F.3d 1155, 1161-62 (9th Cir. 2012).

## II. EQUITABLE ESTOPPEL

The holding in *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042 (9th Cir. 2009) does not appear to compel the result sought by RIM. That case arose in a distinct factual scenario involving two contracts but only one agreement to arbitrate. *Mundi*, 555 F.3d at 1045-46. Moreover, *Mundi* likely prevents the application of equitable estoppel where a signatory to a contract brings a claim against a non-signatory to the contract, and the non-signatory attempts to enforce the arbitration agreement:

> Neither line of cases addresses the precise situation we face. Although DuPont addressed the issue of a nonsignatory seeking to enforce an arbitration agreement against a signatory, in that case, it was a nonsignatory who brought claims against the signatory, rather than the signatory bringing claims against a nonsignatory. Comer itself addressed whether a signatory to an arbitration agreement could enforce the agreement against a nonsignatory. And, in light of the general principle that only those who have agreed to arbitrate are obliged to do so, we see no basis for extending the concept of equitable estoppel of third parties in an arbitration context beyond the very narrow confines delineated in these two lines of cases.

*Id.* at 1046. Accordingly, the case law cited does not allow RIM to assert now that Mitchell is equitably estopped from seeking to avoid individual arbitration because of the Sprint agreement.

### III. SEVERANCE OF UNCONSCIONABLE TERMS

On May 24, 2012, the Court asked for "a ten-page brief" on the subject of the Court's authority to sever unconscionable terms from the Service Agreement. (Docket No. 26; Trans. at 29:15-30:18). Mitchell filed objections to RIM's opening supplemental brief, arguing in part that RIM's brief exceeded the scope of the Court's Order, and arguing in part that portions of RIM's brief essentially sought reconsideration of the Court's tentative opinion that portions of the Service Agreement were unconscionable. (Docket No. 31). Because the Court did not formally issue its conclusions about the unconscionability of the arbitration agreement at the time of supplemental briefing, it cannot conclude that RIM's motion was improper *per se* as a violation of Local Rule 7-18. The Court therefore OVERRULES the evidentiary objections to the Declaration of Stephen R. Smerek and the attached AAA documents.

However, the Court will not entertain new arguments regarding the unconscionability of the arbitration agreement that Mitchell did not have the opportunity to address in the course of briefing the pending motion, or that should have previously been presented. The Court agrees that the submission violates the spirit of Local Rule 7-18. The AAA documents should have been presented in the original motion, and the Court does not rely on them in its reasoning that this Motion should be granted.

In the remaining portions of its supplemental brief, RIM argues that the Service Agreement expressly allows the Court to sever portions of the contract that it finds to be illegal, invalid, or unenforceable:

> To the extent any section, clause, provision or sentence or part thereof ("Part") of this Agreement is determined to be illegal, invalid or unenforceable by a competent authority in any jurisdiction, then such determination of that Part will not affect: (i) the legality, validity or enforceability of the remaining Parts of this Agreement . . . and that Part will be limited if possible and only thereafter severed, if necessary, to the extent required to render the Agreement valid and enforceable.

(Docket No. 30, Supp. Mot. at 3). Mitchell does not appear to dispute the existence or applicability of this provision but responds to RIM by arguing that the Service Agreement is so permeated with unconscionability that public policy favors voiding the contract in its entirety. (Docket No. 32, Supp. Opp'n at 2-3; Ex. 6 to Bocking Decl. at 74).

The Court disagrees with Mitchell and finds that certain clauses can be severed such that the arbitration agreement attains requisite mutuality under California law. Moreover, the extremely weighty public policy favoring arbitration militates in favor of severance.

As Mitchell acknowledges, the first step in the Court's analysis is whether the arbitration agreement can be saved by striking the offending provisions. (Supp. Opp'n at 2). The California Supreme Court has recognized the importance of giving severance due consideration:

> Two reasons for severing or restricting illegal terms rather than voiding the entire contract appear implicit in case law. The first is to prevent parties from gaining undeserved benefit or suffering undeserved detriment as a result of voiding the entire agreement-particularly when there has been full or partial performance of the contract. Second,

> more generally, the doctrine of severance attempts to conserve a contractual relationship if to do so would not be condoning an illegal scheme.

*Armendariz*, 24 Cal. 4th 83 at 23-24. Furthermore, California law takes a liberal view of severance. *See, e.g., Coast Vill., Inc. v. Equilon Enter.*, LLC, 163 F. Supp. 2d 1136, 1180 (C.D. Cal. 2001), aff'd, 64 F. App'x 36 (9th Cir. 2003). "Thus, so long as the 'basic intent' of the agreement(s) is preserved without inclusion of these provisions, they are severable from the agreement, and the remainder enforceable." *Id.*

Although Mitchell now argues both that the entire Service Agreement is so permeated by unconscionability as to be unsalvageable and that he does not challenge the validity of the entire Service Agreement, the Court concludes that its analysis is restricted to the arbitration agreement and provisions binding on the arbitration agreement. Mitchell's initial challenge, and the crux of his continued opposition (as emphasized during the Court's July 20, 2012 telephonic conference), is to the arbitration agreement, not the Service Agreement as a whole. Accordingly, it is appropriate for the Court to address his challenge to the arbitration agreement and sever unconscionable terms such that the agreement can be salvaged. In doing so, the Court is motivated by the Supreme Court cases that "place it beyond dispute that the FAA was designed to promote arbitration. They have repeatedly described the Act as 'embod[ying] [a] national policy favoring arbitration', and 'a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary . . . .'". *Concepcion*, 131 S. Ct. at 1749.

Accordingly, the Court concludes that exclusion of the offending provisions does not undermine the basic intent of the arbitration agreement, which is not so pervasively unconscionable that it is unsalvageable. Additionally, the basic intent of the agreement comports with and furthers the

overwhelming public policy in favor of arbitration. The Court hereby strikes the following clauses of the Service Agreement, attached as Exhibit 6 to the Declaration of Andrew Bocking:

- Limitation of Liability, ¶ 20(b): To the maximum extent permitted by applicable law, in no event shall the aggregate liability of RIM exceed the greater of: (i) the amount paid by You for the RIM Product(s), and/or for that portion of the Software (as the case may be) that gave rise to the claim; and (ii) five (5) United States dollars.
- Governing Law and Dispute Resolution, ¶ 26(d): to be conducted in New York, New York
- Governing Law and Dispute Resolution, ¶ 26(d): Each Party shall bear one half of the costs associated with the arbitration proceedings.
- Governing Law and Dispute Resolution, ¶ 26(d): Notwithstanding the foregoing, RIM has the right to institute legal or equitable proceedings, including proceedings seeking injunctive relief, in a court of law for claims or disputes regarding: (i) amounts owed by You to RIM in connection with Your acquisition of Your BlackBerry Solution or any portion thereof, if applicable; and (ii) Your violation or threatened violation of the Sections of this Agreement entitled, "Desktop Cryptography Support" (Section 6), "Use of Your BlackBerry Solution" (Section 3), "Software and Documentation License" (Section 2), "Intellectual Property" (Section 7), "Export, Import and Use Restrictions and U.S. Government Licenses" (Section 9), "Security" (Section 10), "Confidentiality and No Reverse Engineering" (Section 11) and "Effect of Termination" (Section 14). You irrevocably waive any objection on the grounds of venue, forum non-conveniens or any

> similar grounds and irrevocably consent to service of process by mail or in any other manner permitted by applicable law and irrevocably consent, submit and attorn to the jurisdiction of the courts located in the County of New York, New York for any such claims arising from or related to this Agreement.

The Court is unconvinced by RIM's argument that it is inappropriate for the Court to sever the limitation of damages provision. In deciding *Buckeye*, the Supreme Court determined that whether an arbitration contract was void as a whole for illegality was a question for the arbitrator. *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 449, 126 S. Ct. 1204, 163 L. Ed. 2d 1038 (2006) ("[A] challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator."). As the Court does not address whether the Service Agreement is void for illegality, *Buckeye* is inapplicable.

## IV. CONCLUSION

The Court finds the arbitration agreement in the Service Agreement unconscionable, and severs the offending provisions as described above. Having so severed those clauses, the Court GRANTS RIM's Motion to Compel Arbitration. The Court retains jurisdiction over this action, including, without limitation, for the purposes of entertaining any motion to confirm the award of the arbitrator and for granting such other and further relief as the Court may deem proper. The parties are directed to file a joint status report with the Court within 90 days of the date of this Order, and every 90 days thereafter until such time that there is a decision by the arbitrator.

IT IS SO ORDERED.

Dated: December 4, 2012

MICHAEL W. FITZGERALD
United States District Judge

## Attachment to Form A-02 Notice of Appeal

## Representation Statement

Below is a service list showing all of the parties to the Order appealed from and identifies their counsel by name, firm address, telephone number and e-mail address, where appropriate. (Federal Rules of Appellate Procedure, Rule 12(b); Circuit Rule 3-2(b).)

Plaintiff, ERIC MITCHELL, individually and on behalf of all others similarly situated:

RIDOUT & LYON, LLP
CHRISTOPHER P. RIDOUT (SBN 143931)
    Email: c.ridout@ridoutlyonlaw.com
CALEB LH MARKER (SBN 269721)
    Email: c.marker@ridoutlyonlaw.com
555 E. Ocean Blvd., Suite 500
Long Beach, California 90802
(562) 216-7380
(562) 216-7385 Facsimile

Defendants, RESEARCH IN MOTION, LTD., a Canadian corporation, and RESEARCH IN MOTION, CORPORATION., a Delaware corporation"

WINSON & STRAWN LLP
Stephen R. Smerek (SBN 208343)
    Email: ssmerek@winston.com
333 S. Grand Ave., 38th Floor
Los Angeles, CA 90071
(213) 615-1700
(213) 615-1750 Facsimile